EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mapfre Praico Insurance Company, Reliable Financial Services, Inc.<br><br>Peticionarios<br><br>Y Waldemar R. Santiago Ramos y Fulano de Tal<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, representado por el Secretario de Justicia<br><br>Recurrido | Certiorari<br><br>2016 TSPR 53<br><br>195 DPR ____ |

Número del Caso: CC-2013-1077


Fecha: 18 de marzo de 2016


Tribunal de Apelaciones:

        Región Judicial de San Juan – Guayama, Panel II


Abogados de la parte peticionaria:

        Lcda. María C. Rodríguez Miranda
        Lcdo. Luis Rivera Martínez


 Oficina de la Procuradora General:

        Lcda. Margarita Mercado Echegaray
        Procuradora General

        Lcda. María Astrid Hernández Martin
        Procuradora General Auxiliar


Materia: Sentencia con Opinión de Conformidad


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mapfre Praico Insurance Company,
  Reliable Financial Services,
          Inc.

          Peticionarios

  Y Waldemar R. Santiago Ramos y
          Fulano de Tal

                  v.

  Estado Libre Asociado de Puerto
     Rico, representado por el
       Secretario de Justicia

          Recurrido

*Certiorari*

CC-2013-1077

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de marzo de 2016.

El 8 de septiembre de 2011, el Estado confiscó un vehículo de motor propiedad del Sr. Waldemar R. Santiago Ramos, el cual presuntamente fue utilizado por el Sr. Alexis A. Reyes Pérez y el Sr. José R. Ríos Román en violación a la Ley de Sustancias Controladas y a la Ley de Armas de Puerto Rico.[1] Como consecuencia de estos mismos hechos, el Estado comenzó un procedimiento

---

[1] Específicamente, se les imputaron violaciones al Art. 401 de la Ley Núm. 4 de 23 de junio de 1971, según enmendada, Ley de Sustancias Controladas de Puerto Rico, 24 LPRA sec. 2401, y los Arts. 5.04 y 6.01 de la Ley de Armas, supra. Véase, Apéndice de la Petición de *certiorari*, *Carta sobre notificación de la* confiscación, pág. 58.

criminal en contra de ambos ocupantes.[2] En lo que respecta al señor Reyes Pérez, el proceso penal culminó luego de que el Tribunal determinara no causa probable para acusar durante una vista preliminar en alzada.[3] Mientras que los cargos contra el señor Ríos Román fueron archivados a tenor con el inciso (b) de la Regla 247 de Procedimiento Criminal luego de que el Ministerio Público informara que toda la evidencia con la que contaba había sido suprimida.[4]

A raíz de ambos resultados, Mapfre Praico Insurance Company y Reliable Financial Services, Inc., presentaron dos solicitudes de sentencia sumaria como parte de una demanda de impugnación de confiscación que habían presentado previamente mientras se dilucidaba el procedimiento criminal.[5] En éstas argumentaron que el Tribunal debía aplicar la doctrina de impedimento colateral y, como consecuencia, declarar ha lugar la demanda de impugnación de confiscación mediante el mecanismo sumario. Evaluadas tales peticiones de dictamen sumario, así como las correspondientes oposiciones del Estado, el Tribunal de Primera Instancia denegó la

---

[2] En el caso del señor Reyes Pérez, el Ministerio Público presentó cargos por violación al Art. 401 de la Ley de Sustancias Controladas, *supra*, y los Arts. 5.04 y 6.01 de la Ley de Armas de Puerto Rico, *supra*. En cuanto al señor Ríos Román, el Ministerio Público presentó los mismos cargos, pero incluyó, además, un cargo por presunta infracción al Art. 3.23 de la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22-2000, 9 LPRA sec. 5073.

[3] Véase, Caso CC-2013-1077, Apéndice, *Vista preliminar en alzada, Regla 24 de Procedimiento Criminal: Resolución*, pág. 85c.

[4] Íd., *Sentencia, archivo y sobreseimiento del caso*, págs. 85-D y 85-E. Véase, además, íd., *Minuta*, pág. 85F. El señor Ríos Román hizo una alegación de culpabilidad por infracción al Art. 3.23 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*. Íd.

[5] Véase, Caso CC-2013-1077, Apéndice, *Solicitud de sentencia sumaria*, págs. 44-49 y 67-74. Véase, además, íd., *Demanda*, págs. 1-4.

disposición sumaria del caso por entender que "el derecho vigente no contempla el impedimento colateral automático".[6]

Inconforme con esta determinación, Mapfre y Reliable acudieron al Tribunal de Apelaciones y alegaron, en esencia, que el foro primario había errado al no aplicar la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia. No obstante, el Tribunal de Apelaciones denegó la expedición del *certiorari* solicitado por entender que la "resolución impugnada es correcta en derecho".[7] No conforme con ello, Mapfre y Reliable acudieron ante esta Curia mediante una petición de *certiorari*, la cual fue acogida mediante Resolución del 3 de febrero de 2014.

El 1 de marzo de 2016, el Tribunal celebró una vista oral en la que todas las partes tuvieron la oportunidad de exponer sus respectivos planteamientos. Ahora bien, luego de considerar detenidamente los escritos presentados por las partes, así como los argumentos planteados por éstas durante la vista oral, los Jueces y las Juezas de este Tribunal se encuentran **igualmente divididos** en cuanto a sus votos. Por lo tanto, y conforme a la Regla 4, inciso (a) del Reglamento de este Tribunal Supremo,[8] se confirma el dictamen recurrido del Tribunal de Apelaciones en el caso KLCE2013-01096.

---

[6] Íd., *Orden*, pág. 111.

[7] Íd., *Resolución*, pág. 157.

[8] 4 LPRA Ap. XXI-A.

Lo acordó y manda el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García emitió una Opinión de Conformidad a la que se unieron el Juez Asociado señor Martínez Torres, el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Feliberti Cintrón. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión Disidente. La Jueza Presidenta Oronoz Rodríguez hizo constar la siguiente expresión: "La Jueza Presidenta Oronoz Rodríguez disiente por entender que procedía declarar con lugar la demanda de impugnación de confiscación y ordenar la devolución del vehículo. Ello, en vista de que la causa penal relacionada con la confiscación no prosperó." La Jueza Asociada señora Pabón Charneco hizo constar la siguiente expresión: "La Jueza Asociada señora Pabón Charneco disiente del resultado anunciado en la sentencia que antecede por los fundamentos expresados en la Opinión de conformidad emitida en Banco Bilbao Vizcaya et al. v. ELA, CC-2012-0767, res. el 18 de marzo de 2016." El Juez Asociado señor Estrella Martínez hizo constar la siguiente expresión: "El Juez Asociado señor Estrella Martínez disiente del dictamen emitido por este Tribunal por los fundamentos contenidos en su Voto Particular Disidente emitido en Bco. Bilbao Vizcaya et al. v. ELA et al., 2015 TSPR 152, 194 DPR __ (2015)."

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mapfre Praico Insurance Company,
Reliable Financial Services,
Inc.
Peticionarios

Y Waldemar R. Santiago Ramos y
Fulano de Tal

v.

Estado Libre Asociado de Puerto
Rico, representado por el
Secretario de Justicia
Recurrido

*Certiorari*

CC-2013-1077

**Opinión de conformidad emitida por el Juez Asociado señor RIVERA GARCÍA a la que se unen el Juez Asociado señor Martínez Torres, el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Feliberti Cintrón**

En San Juan, Puerto Rico, a 18 de marzo de 2016.

Aunque lo ideal hubiese sido que los miembros de este Tribunal pudieran alcanzar una decisión de consenso que funcionara de guía para todos nuestros tribunales respecto a la resolución de los casos en los que se cuestiona la relación entre el proceso civil de confiscación y el proceso penal que se pudiera originar por los mismos hechos, debo expresar mi conformidad con la confirmación del dictamen emitido por el Tribunal de Apelaciones en el caso KLCE2013-01096. Cónsono con lo resuelto por el Tribunal de Apelaciones, y

a tono con las disposiciones de la Ley Uniforme de Confiscaciones de 2011,[9] los foros primarios *no* deben disponer de una acción civil de impugnación de confiscación basados *exclusivamente* en el resultado favorable obtenido en la esfera penal. No se sostiene en derecho que un dictamen favorable en un proceso penal anule automáticamente y sin mayor consideración un proceso civil de confiscación para el cual, como primer punto, se requiere un estándar de prueba mucho menor. Siendo así, independientemente del desenlace criminal a favor del imputado de delito a raíz de los mismos hechos que motivaron la confiscación, *y en ausencia de algún otro planteamiento que amerite un dictamen sumario*, los Tribunales de Primera Instancia deben dilucidar en sus méritos las demandas civiles de impugnación de confiscación conforme al proceso delineado por la Asamblea Legislativa en la nueva legislación.

A continuación explicamos en más detalle nuestra posición. En ello, y a fin de propiciar así una mejor comprensión de la opinión de conformidad que hoy emitimos, primeramente expondremos una perspectiva general del proceso de confiscación dirigida, particularmente, a resaltar las diferencias entre una confiscación civil y una confiscación criminal, las cuales parecen pasar por alto los compañeros Jueces y Juezas que están conforme con el resultado alcanzado por el Tribunal de Apelaciones en

---

[9] Ley Núm. 119-2011, según enmendada, conocida como "Ley Uniforme de Confiscaciones de 2011". (34 LPRA secs. 1724-1724w).

el presente caso. Segundo, repasaremos los pronunciamientos anteriores emitidos por este Tribunal en los cuales aplicó la doctrina de impedimento colateral por sentencia, y como consecuencia, avaló la anulación de la confiscación en aquellos casos en que el imputado de delito hubiese obtenido un resultado favorable. Tercero, indagaremos brevemente sobre los fundamentos que sustentaron la jurisprudencia anterior emitida por este Tribunal. Por último, expondremos las nuevas disposiciones de la Ley Uniforme de Confiscaciones de 2011 a fin de determinar si la Asamblea Legislativa mantuvo la intención de continuar condicionando el proceso civil de confiscación a las incidencias suscitadas en la esfera penal.

I

A. **Confiscación: conceptos generales**

La confiscación es el acto mediante el cual el Estado, representado en este caso por el Poder Ejecutivo, priva a una persona de su propiedad sin compensación económica, basado únicamente en que dicha propiedad fue utilizada en la comisión de ciertos delitos predeterminados por la Asamblea Legislativa o porque tal bien es producto o resultado de una conducta prohibida por ley.[10] En ese esquema, le corresponde *exclusivamente* al Poder Legislativo determinar bajo qué circunstancias,

---

[10] Ford Motor v. E.L.A., 174 DPR 735, 741 (2008); Suárez v. E.L.A., 162 DPR 43 (2004); Del Toro v. E.L.A., 136 DPR 973, 980-981 (1994).

condiciones y procedimientos particulares el Estado está facultado para confiscar una propiedad involucrada en una actividad delictiva, dentro de los parámetros constitucionales aplicables.[11] En este ejercicio, la Asamblea Legislativa podría instituir el proceso de confiscación bajo una de dos modalidades: *primero*, mediante una confiscación de carácter criminal, conocida como confiscación *in personam* o; *segundo*, por vía de una confiscación de índole civil, mejor conocida como confiscación *in rem*.[12]

De la Asamblea Legislativa optar por la primera modalidad, instituiría entonces la confiscación como una penalidad adicional contra una persona que ha sido convicta de delito. Es por esto que la confiscación *in personam* forma parte integral del procedimiento criminal, ya que se trata de una acción directa contra el propietario o poseedor de la propiedad a ser incautada y cuya procedencia va a depender ineludiblemente de que la persona salga culpable del delito imputado. Únicamente en esas circunstancias se le podría confiscar la propiedad como una sanción adicional. Por lo tanto, bajo este procedimiento, el involucramiento de la persona en la

---

[11] En el caso de Puerto Rico, el poder de confiscación del Estado está supeditado a las exigencias constitucionales incluidas en el Art. II, Sec. 7 de la Constitución de Puerto Rico, Art. II, Sec. 7, Const. E.L.A., LPRA, Tomo I y la Enmienda Quinta y Catorceava de la Constitución de Estados Unidos, U.S.C.A. Enmd. V y XIV, las cuales garantizan que ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley.

[12] Mapfre PRAICO, et als. v. E.L.A., 188 DPR 517, 525 (2013); Coop. Seg. Múlt. v. E.L.A., 180 DPR 655, 664 (2011).

actividad delictiva, y eventual convicción, es el fundamento que da base a la confiscación de la propiedad.

Por otra parte, del Poder Legislativo instituir la segunda modalidad de confiscación, se establecería entonces un procedimiento civil *in rem* que va dirigido contra la cosa misma y no contra el dueño de la propiedad, su poseedor, encargado o cualquier otra persona con algún interés legal sobre esta.[13] Por ello, la pregunta a dilucidar bajo este procedimiento es, si la propiedad confiscada fue utilizada para la comisión de una actividad delictiva. Siendo así, bajo la modalidad de confiscación *in rem* la interrogante de quién utilizó la propiedad es, generalmente, impertinente porque el objetivo principal de esta acción es demostrar que la propiedad fue utilizada en una actividad prohibida por ley, independientemente de quién lo hizo. En ese sentido, no se trata de adjudicarle a la propiedad la capacidad de delinquir y tratarla como la autora de un delito, sino de establecer mediante preponderancia de la prueba que la propiedad fue empleada en la comisión de una actividad ilegal. Conforme a ello, en *todos* los casos de confiscación resueltos por esta Curia se ha reiterado que los *únicos* elementos pertinentes a la determinación de si procede una confiscación civil son: (1) si existe *prueba suficiente y preponderante* de

---

[13] López v. Secretaria, 162 DPR 345, 352 (2004); Negrón v. Srio. de Justicia, 154 DPR 79,87 (2001).

que se ha cometido un delito y (2) si existe un nexo entre la comisión del b delito y la propiedad confiscada.[14]

Nótese que contrario a la confiscación *in personam*, la confiscación *in rem* es una acción completamente separada e independiente del procedimiento criminal que se dilucide contra el presunto autor del delito. Por ello, la confiscación civil podría prevalecer aun cuando el Estado no haya obtenido un resultado favorable en el proceso penal. Esto, pues, como mencionara, *el enfoque en la confiscación civil no es si la persona incurrió en un delito, sino si la propiedad fue utilizada en una actividad ilegal* (e.g. si determinado vehículo de motor fue utilizado para transportar droga, independientemente de quién la transportó).[15] En ese escenario, el derecho del Estado a tomar la propiedad surge, precisamente, de ese uso indebido.

En el caso particular de Puerto Rico, la Asamblea Legislativa históricamente ha optado por adoptar esta instancia de confiscación *in rem*.[16] Así, cónsono con la doctrina discutida, reiteradamente este Tribunal ha aludido a las distinciones típicas entre las

---

[14] Suárez v. E.L.A., 162 DPR 43, 52 (2004); Del Toro Lugo v. E.L.A., supra, pág. 983; Pueblo v. González Cortés, 95 DPR 164, 171 (1967).

[15] Esto sujeto a las correspondientes defensas reconocidas en nuestro ordenamiento (e.g. tercero inocente).

[16] Véanse, la derogada Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones, Ley Núm. 39 de 4 de junio de 1960, 34 LPRA ants. secs. 1721 y 1722, sustituida por la también derogada Ley Uniforme de Confiscaciones de 1988, Ley Núm. 93 de 13 de julio de 1988 34 LPRA ants. secs. 1723 - 1723(p), y la actual Ley Uniforme de Confiscaciones de 2011, Ley Núm. 119-2011, supra.

confiscaciones civiles y las confiscaciones criminales. No obstante, esa discusión se ha limitado a una referencia automática, casi dogmática, como parte de un repaso doctrinal del proceso de confiscación y la cual nunca ha tenido un impacto real en la adjudicación de las controversias que hemos considerado hasta el presente concerniente al tema de confiscación.[17]

Esto porque, al momento de adjudicar las controversias suscitadas bajo las leyes de confiscaciones anteriores, y a pesar de que estas establecían la naturaleza *in rem* del procedimiento, este Tribunal siempre partió de la premisa *fundamentada* de que la Asamblea Legislativa tenía la intención de condicionar la acción civil de confiscación al resultado de la acción penal. Es por ello, que consistentemente este Tribunal utilizó la doctrina cosa juzgada en su modalidad de impedimento colateral por sentencia para anular toda confiscación que estuviera acompañada de un dictamen favorable al imputado en el proceso penal. Así, se ha avalado la disposición sumaria de las demandas de impugnación de confiscación sin una adjudicación en sus méritos, simplemente basados en los acontecimientos suscitados en la esfera penal. De esta forma, hasta el momento este Foro le ha brindado a la confiscación *civil* un tratamiento paralelo y fundamentado en las características esenciales de una confiscación *criminal*. Veamos.

---

[17] Véase, Coop. Seg. Mult. v. E.L.A., supra, págs. 664-665; Del Toro Lugo v. E.L.A., supra, págs. 981-983.

### B. Doctrina de impedimento colateral por sentencia y su aplicación al proceso de confiscación en decisiones anteriores bajo la legislación derogada

La doctrina de impedimento colateral por sentencia opera cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final, y la determinación es concluyente en un segundo pleito entre las mismas partes.[18] Es decir, la aplicación de esta doctrina depende de que un hecho fundamental en un proceso actual haya sido *expresamente* dilucidado como un *elemento clave* en un proceso anterior mediante una sentencia legítima y final entre las mismas partes.[19] De ese ser el caso, la doctrina de impedimento colateral por sentencia evita que las partes tengan la necesidad de litigar nuevamente un hecho ya adjudicado entre ellas en un dictamen anterior.[20]

En el contexto específico de las confiscaciones, este Tribunal ha utilizado esta doctrina *estatutaria* para concluir que la absolución en los méritos adjudica con finalidad irreversible el hecho central, tanto del caso criminal como el de confiscación, de que la propiedad no

---

[18] Coop. Seg. Mult. v. E.L.A., 180 DPR 655, 672-673 (2011); Suárez v. E.L.A., 162 DPR 43, 59 (2004).

[19] Por "hecho necesario" o "elemento clave" nos referimos a que ese hecho que se pretende identificar en el segundo proceso como uno previamente adjudicado, haya sido *necesario* y *fundamental* en el razonamiento de la sentencia emitida por el Tribunal en el primer proceso. Sólo así, se podría establecer en estricto rigor jurídico, que ese hecho, en efecto, fue debidamente adjudicado mediante sentencia final y firme. Véanse, Beníquez v. Vargas, 184 DPR 2010, 225-226 (2012); Presidential v. Transcaribe, 186 DPR 263, 276-277 (2012).

[20] E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Vol. II, San Juan, Ed. Forum, 1992, págs. 376-385.

se utilizó para una actividad ilícita. Por ello, desde Carlo v. Srio. de Justicia, 107 DPR 356 (1978), este Foro determinó que "[l]a doctrina de impedimento colateral por sentencia exige la desestimación del segundo proceso, aun cuando tenga por objeto un delito distinto, si al resolverse el caso anterior se adjudicaron y determinaron hechos necesariamente decisivos para el segundo".[21] En esa ocasión, este Tribunal específicamente delimitó el alcance de esta normativa a aquellas circunstancias en las que, en efecto, se hubiese dado una "absolución en los méritos [que] inevitablemente comprend[iera] la adjudicación de la cuestión central de que no [se] utilizó el vehículo" en una actividad delictiva.[22]

A pesar de esta delimitación, la realidad ha sido que desde entonces, esta Curia ha establecido varias excepciones cuyo efecto directo ha consistido en condicionar la continuación de la acción civil de confiscación al resultado de la acción penal, independientemente de si en el proceso penal se adjudicó o no en los méritos el hecho central de que la propiedad confiscada no fue utilizada en una actividad prohibida por ley. Así, por ejemplo, en Del Toro v. E.L.A., 136 DPR 973

---

[21] Carlo v. Srio. de Justicia, supra, pág. 363.

[22] (Énfasis y subrayado nuestro). Íd., págs. 364-365. Sobre este particular, el Tribunal expresó específicamente lo siguiente: "[l]a decisión que hoy tomamos está *estrictamente ceñida* a la situación de derecho que se produce al concurrir circunstancias determinantes, a saber: que el acusado es dueño del vehículo confiscado; que su absolución en los méritos inevitablemente comprende la adjudicación de la cuestión central de que no utilizó el vehículo para transportar material prohibido". (Énfasis y subrayado nuestro). Íd.

(1994), esta Corte sostuvo que no procedía continuar con el proceso de confiscación de un vehículo de motor propiedad de un tercero cuando una determinación de no causa probable para acusar adviene final y firme. En esa ocasión se determinó, además, que no procedía la confiscación cuando en el proceso penal concluía luego del sobreseimiento del caso a raíz de la supresión de la única evidencia delictiva ocupada mediante un registro ilegal. Bajo ese escenario el Tribunal concluyó que,

> la determinación final y firme respecto a la exclusión o supresión de una evidencia ilegalmente obtenida hecha en el procedimiento penal por el delito que da base a la confiscación, constituiría cosa juzgada en su modalidad de impedimento colateral por sentencia, en cuanto a la admisión de dicha evidencia en la acción de impugnación de confiscación, siempre que dicha determinación judicial sea debidamente planteada e introducida en evidencia.[23]

Aunque con un resultado distinto, pero cónsono con la tendencia de exigir un dictamen de culpabilidad en el proceso penal como condición necesaria para continuar el proceso civil de confiscación, en First Bank, Univ. Ins. Co. v. E.L.A., 156 DPR 77 (2002), este Tribunal determinó que la ausencia de causa probable en cuanto al poseedor del vehículo de motor confiscado, hijo del dueño registral, no impedía la confiscación de la propiedad, ya que uno de los pasajeros se había declarado culpable. De esta manera, esta Curia negó la aplicación de la doctrina

---

[23] Del Toro v. E.L.A., supra, pág. 997.

de impedimento colateral por sentencia y ordenó la continuación del proceso de confiscación.[24]

Igual conclusión alcanzó este Tribunal, posteriormente, en Suárez v. E.L.A., 162 DPR 43 (2004). En ese momento, determinamos que la doctrina de impedimento colateral por sentencia impedía la continuación del proceso civil de confiscación en todo aquel caso en que los cargos criminales hayan sido desestimados por incumplimiento con los términos de juicio rápido. En esta ocasión, los cargos criminales habían sido desestimados porque el Ministerio Público no cumplió con el término estatutario para la celebración de la vista preliminar. Así que, transcurrido más de dos años sin la presentación de nuevos cargos criminales, este Tribunal entendió que procedía declarar con lugar la demanda de impugnación de confiscación ante la presunta dejadez reflejada por el Estado en el caso penal.

---

[24] Interesantemente, en aquella ocasión, este Foro reconoció, incluso, la improcedencia de la anulación automática del proceso civil de confiscación basado en un resultado favorable en el proceso penal. Sobre este particular, este Foro expresó lo siguiente:

> La aplicación de la doctrina de impedimento colateral no afecta el hecho principal de que la confiscación es un procedimiento de carácter in rem, es decir, va dirigido contra la cosa misma y no contra el dueño de la propiedad, su poseedor, encargado o cualquier otra persona con algún interés legal sobre ésta. Por esto, *el impedimento colateral no aplica de manera automática al impugnar la confiscación del vehículo. Aunque el poseedor del vehículo resulte absuelto de los cargos imputados, esto no es en sí mismo suficiente para declarar inválida la confiscación. Lo determinante es si alguna actividad delictiva se ha cometido en el vehículo o mediante el uso del vehículo,* aunque la misma no haya sido cometido por el poseedor o conductor del mismo.

(Énfasis y subrayado nuestro). First Bank, Univ. Ins. Co. v. E.L.A., supra, pág. 83.

Cuatro años más tarde, este Foro resolvió dos casos adicionales en los que reconocimos dos nuevas excepciones que impedían la continuación de la acción civil de confiscación basado en el resultado del proceso penal: Ford Motor v. E.L.A., 174 DPR 735 (2008) y Díaz Morales v. Dpto. de Justicia, 174 DPR 956 (2008). En el primero, la persona acusada se había declarado culpable por cargos de posesión de drogas y cumplido con todos los requisitos de un programa de desvío, por lo que el foro primario había ordenado el archivo y sobreseimiento del caso. Ante tales circunstancias, este Tribunal estableció que "el archivo y sobreseimiento de una acusación criminal al amparo de un programa de desvío y rehabilitación consti[tuía] cosa juzgada en su modalidad de impedimento colateral por sentencia en una acción civil de impugnación de confiscación".[25]

En el segundo caso, el cual concernía a un menor en circunstancias análogas a las expuestas en el párrafo anterior, esta Curia resolvió que procedía declarar ha lugar una demanda civil de impugnación de confiscación una vez el menor cumpliera con el contrato de desvío y obtuviera un archivo definitivo de la causa penal. Esto porque, según razonaron los miembros de este Alto Foro en aquel entonces, "una vez se archiva la denuncia, según los términos del programa, se adjudica de forma favorable al acusado y se dispone con finalidad del hecho central del

---

[25] Ford Motor v. E.L.A., supra, pág. 738.

cual depende la confiscación: la comisión de un acto delictivo".[26]

Finalmente, en Coop. Seg. Mult. v. E.L.A., 180 DPR 655 (2011), este Tribunal atendió la controversia sobre qué efecto tiene sobre el procedimiento civil de confiscación la muerte de una persona que presuntamente utilizó la propiedad confiscada en un acto delictivo. Ante esta interrogante, *y aún bajo las disposiciones de la Ley Uniforme de Confiscaciones de 1988*, este Foro resolvió que procedía anular el proceso confiscatorio en la medida que la muerte de la persona imputada de delito extinguía la acción penal. Una vez más, este Tribunal le impregnó un carácter criminal a la confiscación de índole civil al no avalar el que se continuará el proceso de confiscación sin que alguien hubiese sido convicto de delito.

En resumen, durante la vigencia de la Ley Uniforme de Confiscaciones de 1960 y la Ley Uniforme de Confiscaciones de 1988 este Tribunal reconoció varias excepciones que automáticamente anulaban el proceso *civil* de confiscación basado en las incidencias suscitadas en el proceso *criminal*, sin una dilucidación en los méritos sobre la controversia específica concerniente al proceso civil sobre si la propiedad confiscada fue utilizada en alguna actividad prohibida por ley. De esta manera, previo a la aprobación de la nueva ley de confiscaciones había un "*decidido desarrollo* de nuestra jurisprudencia hacia

---

[26] Díaz Morales v. Dpto. de Justicia, supra, págs. 962-963.

condicionar el proceso civil de confiscación al resultado de la causa criminal contra el alegado autor del delito".[27]

### C. Fundamentos de la jurisprudencia anterior emitida por este Tribunal

En este punto resulta meritorio destacar los fundamentos que sustentaron los pronunciamientos anteriores aquí repasados en los que, como vimos, este Tribunal constantemente condicionó la continuación del proceso civil de confiscación a lo acontecido a nivel penal. Como explicaremos, éstos estuvieron basados en dos premisas no articuladas o discutidas a profundidad en las opiniones de entonces que hoy, conforme a las disposiciones de la nueva ley, indudablemente, cobran particular importancia. *Primero*, en el presunto carácter "punitivo" del proceso de confiscación según estatuido en la legislación entonces vigente. *Segundo*, en la voluntad legislativa del momento de vincular el proceso civil de confiscación al proceso penal.

Como primer punto, no hay duda que un repaso de la jurisprudencia emitida por este Tribunal durante la vigencia de las derogadas legislaciones de confiscaciones de 1960 y 1988 nos lleva a constatar que, en efecto, este Foro le adjudicó constantemente un carácter "punitivo" al proceso de confiscación y lo caracterizó como un "castigo adicional" a la pena. No obstante, de esa misma jurisprudencia surge que este Tribunal alcanzó tal conclusión sin consignar razonamiento alguno y basado

---

[27] Coop. Seg. Mult. v. E.L.A., supra, pág. 676.

*exclusivamente* en el fin de la Asamblea Legislativa de disuadir la actividad criminal.[28] En otros términos, para entonces fue suficiente el que la legislación mencionara que tenía un objetivo disuasivo para que este Tribunal calificara – sin mayor análisis y consideración – el proceso de confiscación como uno punitivo. Ante tal objetivo, y la *expresa* intención legislativa de *entonces* de vincular la causa criminal contra el presunto autor del delito y la acción civil de confiscación, según discutiremos a continuación, este Tribunal evitó adoptar la clara doctrina federal dirigida a establecer si un proceso de confiscación puede calificarse como "punitivo" y "criminal" en su fin, aun cuando el Poder Legislativo lo haya estatuido como un proceso estrictamente civil.

Como segundo punto sobre el cual se sustentó la jurisprudencia pasada emitida por este Tribunal, encontramos *la clara voluntad legislativa de entonces de vincular el proceso civil de confiscación al proceso penal*, según evidenciado en dos instancias distintas durante la vigencia de la Ley Uniforme de Confiscaciones de 1988. En primer lugar, hallamos que la Asamblea Legislativa tuvo la intención de promulgar una legislación que no fuera contraria a los pronunciamientos que este

---

[28] Véase, e.g., Coop. Seg. Mult. v. E.L.A., supra, pág. 680, donde este Tribunal se expresó en los siguientes términos: "El proceso de incautación de propiedades al amparo de la Ley Uniforme de Confiscaciones es civil en su forma pero punitivo en su naturaleza. Su objetivo, claramente identificado por la Asamblea Legislativa, es castigar al delincuente con la pérdida de su propiedad, además de la posible pérdida de su libertad. A ello se refiere la Legislatura cuando habla del propósito disuasivo de la confiscación".

Tribunal había formulado previo a 1988. Sobre este particular, nótese que la Asamblea Legislativa de entonces específicamente consignó en el Informe Conjunto del Proyecto del Senado 1529 de 20 de mayo de 1988 que nada de lo contenido en lo que eventualmente sería la Ley Uniforme de Confiscaciones de 1988 alteraba la normativa adoptada hasta ese momento por este Tribunal Supremo en materia de confiscación. Esto incluía, claro está, la norma establecida en Carlo v. Srio. de Justicia, supra, respecto a la aplicación de la doctrina de impedimento colateral por sentencia al procedimiento civil de confiscación, basado en el resultado favorable en la causa criminal.[29]

En segundo lugar, es importante recordar que en el 2000 la Asamblea Legislativa aprobó la Ley Núm. 32-2000 para enmendar la Ley Uniforme de Confiscaciones de 1988 y específicamente disponer que el resultado de la acción penal no sería impedimento, ni tendría efecto de cosa juzgada sobre la acción civil de confiscación.[30] Tres años

---

[29] Véase, *Informe Conjunto del P. del S. 1529 de las Comisiones de lo Jurídico, de Transportación y Obras Públicas y de Hacienda del Senado de Puerto Rico de 20 de mayo de 1988*, 10ma. Asamblea Legislativa, 4ta Sesión Ordinaria, el cual en la página siete expresamente establece que "[n]ada en el P. del S. 1529 modifica la interpretación restrictiva a favor de la propiedad confiscada que el tribunal le ha dado a las disposiciones legales y vigentes sobre confiscación. Vázquez Fontánez v. Tribunal Superior, 103 D.P.R. 396 (1974); Carlo v. Secretario de Justicia, 107 D.P.R. 356 (1978)".

[30] Véase, Art. 2, inciso (c) de la Ley Núm. 32-2000, 2000 LPR 376. El mencionado artículo específicamente establecía lo siguiente:

Naturaleza de la acción. – El resultado favorable al acusado o imputado en cualquier de las etapas de la acción criminal no será impedimento para, ni tendrá efecto de cosa juzgada sobre, la acción civil de confiscación, aunque ésta se base en los hechos imputados en la acción penal. Íd.

más tarde, esta enmienda fue derogada mediante la Ley Núm. 18-2003. Esto porque, según la intención y razonamiento de la _entonces_ Asamblea Legislativa, era necesario ajustar el derecho positivo conforme a lo resuelto por este Tribunal en Carlo v. Srio. de Justicia, supra, y Del Toro Lugo v. E.L.A., supra.[31] De hecho, según surge del Informe sobre el Proyecto de la Cámara 1972 de la Comisión de la Jurídico del Senado de Puerto Rico – eventual Ley Núm. 18, supra – esta medida pretendía,

> resolver la situación surgida con la Ley Núm. 32, supra, a los fines de disponer que la absolución en los méritos de una persona en una causa criminal tendrá el efecto de haber nula una confiscación de un vehículo hecha por el Estado a raíz de los mismos hechos que dieron lugar a su procesamiento criminal, en consideración a la doctrina constitucional de cosa juzgada en su modalidad de impedimento colateral por sentencia.
>
> Tras una absolución en el caso criminal o determinación de no causa en la vista preliminar que ha advenido final y firme no existen tales elementos para sostener la confiscación en el

---

Sobre este particular, la parte expositiva de la Ley Núm. 32, supra, mencionaba lo siguiente:

> Aun cuando la doctrina jurisprudencial sobre la materia es clara, en nuestra jurisdicción se ha creado una gran confusión a raíz de las opiniones emitidas por el Tribunal Supremo. La presente medida va encaminada a precisar la naturaleza de la acción confiscatoria y a revisar otros aspectos de conformidad a la experiencia habida en la implantación de la Ley Núm. 93, antes citada.
>
> Consideramos que el resultado de la acción penal no debe ser impedimento, ni tener efecto de cosa juzgada, sobre la acción civil de confiscación, y para así establecerlo, se enmienda la Ley Núm. 93, antes citada, como se propone adelante.

Véanse, además, _Informe del P. de la C. 2621 de la Comisión de lo Jurídico de la Cámara de Representantes de 5 de noviembre de 1999_, 13era Asamblea Legislativa, 6ta Sesión Ordinaria, y la _Ponencia del Departamento de Justicia de 28 de septiembre de 1999 sobre el P. de la C. 2621_.

[31] Véase Exposición de Motivos de la Ley Núm. 18-2003, 2003 LPR 64.

caso civil por lo cual es forzoso concluir la improcedencia de continuar con el mismo.[32]

De esta manera, la Asamblea Legislativa plasmó claramente su intención de reconocer la normativa adoptada por este Tribunal conforme a lo establecido originalmente en el historial legislativo de la Ley Uniforme de Confiscaciones de 1988. Es decir, afirmativamente avaló el que la acción civil de confiscación estuviera condicionada al resultado del proceso penal. Conforme a ello, los casos resueltos bajo la Ley Uniforme de Confiscaciones de 1988, particularmente los resueltos posterior al 2003, respondieron, en esencia, a esa intención legislativa. Así lo reconoció este Tribunal en <u>Coop. Seg. Mult. v. E.L.A.,</u> supra, donde expresó lo siguiente a la luz de las disposiciones de la entonces vigente Ley Uniforme de Confiscaciones de 1988:

> *<u>La Asamblea Legislativa ha reconocido el vínculo entre la causa criminal contra el presunto autor del delito base y la acción de confiscación</u>*. De igual forma, la ley vigente [Ley Uniforme de Confiscaciones de 1988] coincide con nuestros pronunciamientos en cuanto a la aplicación de la doctrina de impedimento colateral por sentencia que condiciona el proceso civil a la causa criminal. La Ley Núm. 18 de 1 de enero de 2003 enmendó la Ley Uniforme de Confiscaciones para eliminar el inciso que añadió la Ley Número 32 de 14 de enero de 2000 que disponía que el resultado favorable al acusado no sería impedimento a la acción civil de confiscación. *<u>La Exposición de Motivos de la Ley Núm. 18 refleja con gran claridad el cambio en el modo de pensar en la Asamblea Legislativa y su</u>*

---

[32] Informe sobre el P. de la C. 1972 de la Comisión de lo Jurídico del Senado de Puerto Rico, 14ta Asamblea Legislativa, 5ta Sesión Ordinaria, págs. 1-3. Aclaramos que, contrario a lo expresado por la Asamblea Legislativa en el citado extracto, la doctrina de impedimento colateral por sentencia es de índole estatutario.

*decisión de vincular la causa criminal contra el presunto autor del delito con el proceso civil de confiscación*.[33]

Cónsono con estos pronunciamientos, este Tribunal debía preguntarse, en primer plano, si bajo la actual Ley Uniforme de Confiscaciones de 2011 subsiste la misma intención legislativa reflejada en la Ley Uniforme de Confiscaciones de 1988 y sus posteriores enmiendas. Es decir, ¿surge de las disposiciones de la Ley Uniforme de Confiscaciones de 2011 y/o de su historial legislativo la intención de la Asamblea Legislativa de condicionar el proceso civil de confiscación al resultado de la acción penal? En segundo plano, debió preguntarse si en la legislación vigente persiste el objetivo disuasivo y si ello, de por sí, ameritaba que continuáramos calificando como "punitivo" el proceso de confiscación. Veamos

### D.   Ley Uniforme de Confiscaciones de 2011

Actualmente, el proceso de confiscación en Puerto Rico se rige por la Ley Núm. 119-2011, la cual establece un procedimiento uniforme para todos los casos de confiscación en nuestra jurisdicción, independientemente de la agencia involucrada y el fundamento para la misma.[34] De acuerdo a esta legislación, el Estado puede ocupar y hacer suya toda propiedad que sea utilizada durante la

---

[33] (Citas omitidas) (Énfasis y subrayado nuestro). Coop. Seg. Mult. v. E.L.A., supra, pág. 677.

[34] Véase, Exposición de Motivos de la Ley Núm. 119-2011. (2011 LPR 1761).

comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación, cuando tales delitos se encuentren tipificados en algún estatuto confiscatorio.[35]

Entre las nuevas disposiciones incluidas en la Ley Uniforme de Confiscaciones de 2011, supra, y pertinentes a este caso, hallamos que la Asamblea Legislativa *expresamente* dispuso el carácter independiente del procedimiento de confiscación con relación a cualquier otro proceso. Al respecto, el Art. 2 de la Ley Núm. 119, supra, establece como política pública "la naturaleza *in rem* de las confiscaciones, *independiente de cualquier otra acción de naturaleza penal, administrativa o de cualquier otra naturaleza*".[36] Cónsono con esta política pública, el Poder Legislativo reiteró que "[e]l proceso de confiscación será uno civil dirigido contra los bienes e *independiente de cualquier otro proceso de naturaleza*

---

[35] Véase, Art. 9 de la Ley Núm. 119, supra, 34 LPRA sec. 1724f, el cual dispone íntegramente lo siguiente:

> Estará sujeta a ser confiscada, a favor del Gobierno de Puerto Rico, toda propiedad que resulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación, cuando tales delitos graves y menos graves se encuentren tipificados en el Código Penal de Puerto Rico, en las leyes de sustancias controladas, de armas y explosivos, en las leyes contra el crimen organizado, en las leyes de juegos prohibidos, bebidas alcohólicas, leyes fiscales, leyes contra la apropiación ilegal de vehículos, leyes de vehículos y tránsito y de embarcaciones; así como en otras leyes y en aquellos estatutos confiscatorios en los que por ley se autorice la confiscación.
>
> Toda propiedad que esté sujeta a una sentencia de confiscación que así lo autorice, será confiscada a favor del Gobierno de Puerto Rico.

[36] (Énfasis nuestro). Art. 2 de la Ley Núm. 119, supra. (34 LPRA sec. 1724).

*penal, civil o administrativa que se pueda llevar contra*
*el dueño o el poseedor de los bienes ocupados* bajo las
disposiciones de cualquier ley que autorice la
confiscación de bienes por parte del Estado".[37]

Así las cosas, la propia legislación específicamente
establece el proceso que las partes y los tribunales deben
seguir durante la acción civil de impugnación de
confiscación. En ese contexto, el Art. 15 de la Ley Núm.
119, supra, establece en su parte aquí pertinente, que "se
presumirá la legalidad y corrección de la confiscación
independientemente de cualquier otro caso penal,
administrativo o cualquier otro procedimiento relacionado
a los mismos hechos".[38] Así, "[e]l demandante tiene el peso
de la prueba para derrotar la legalidad de la
confiscación".[39] Asimismo, dispone que "[p]resentada la
contestación a la demanda, el Tribunal ordenará una vista
sobre legitimación activa para establecer si el demandante
ejercía dominio y control sobre la propiedad en cuestión
antes de los hechos que motivaron la confiscación. De no
cumplir con este requisito, el Tribunal ordenará la
desestimación inmediata del pleito".[40]

En referencia a la derogada Ley Uniforme de
Confiscaciones de 1988 y las respectivas interpretaciones

---

[37] (Énfasis nuestro). Art. 8 de la Ley Núm. 119, supra. (34 LPRA sec. 1724e).

[38] Art. 15 de la Ley Núm. 119, supra. (34 LPRA sec. 1724l).

[39] Íd.

[40] Íd. Véase, además, Mapfre PRAICO, et als. v. E.L.A., supra.

formuladas por esta Curia, la Asamblea Legislativa expresó que "[d]icha Ley ha sido objeto de múltiples enmiendas e interpretaciones judiciales que han causado confusión en la implantación del estatuto".[41] Así que para efectos de dispersar cualquier duda sobre su intención de instituir un proceso de confiscación *in rem* y verdaderamente independiente, los legisladores incluyeron en la parte expositiva de la medida lo siguiente:

> En nuestra jurisdicción, la confiscación es una acción civil o *in rem*, distinta y separada de cualquier acción *in personam*. La confiscación que lleva a cabo el Estado se basa en la ficción legal de que la cosa es la ofensora primaria. *El procedimiento in rem tiene existencia independiente del procedimiento penal de naturaleza in personam, y no queda afectado en modo alguno por éste*. Los procedimientos de confiscación civil puede llevarse a cabo y culminarse antes de que acuse, se declare culpable o se absuelva al acusado. Incluso, pueden llevarse aun cuando no se haya presentado ningún cargo. Esto debido a que la acción civil se dirige contra la cosa en sí misma, en general, la culpabilidad o inocencia del propietario es irrelevante en cuanto a la procedencia o no de la confiscación civil. Goldmith-Grant Co. v. United States, 254 U.S. 505 (1921). Calero-Toledo v. Pearson Yatch Leasing Co., 416 U.S. 663 (1974). United States v. One Assortment of 89 Firearms, 465 U.S. 354 (1984).[42]

Nótese que la referida exposición de motivos consigna, incluso, la jurisprudencia sobre la que fundamenta su intención de instituir una confiscación estrictamente *in rem*. En ninguna parte, menciona alguna de las decisiones que este Tribunal emitió durante la vigencia de las

---

[41] Exposición de Motivos de la Ley Núm. 119, supra. (2011 LPR 1761).

[42] Exposición de Motivos de la Ley Núm. 119, supra, pág. 1-2. (2011 LPR 1762 – 1763).

legislaciones anteriores de confiscación. De esta manera, la política pública vigente establecida por la Asamblea Legislativa sobre confiscación se distancia de las respectivas interpretaciones judiciales formuladas en el pasado, particularmente en lo que respecta a condicionar la acción civil de confiscación al resultado del proceso penal.

De hecho, en la ponencia presentada por el Departamento de Justicia sobre el Proyecto del Senado 897 – eventual Ley Uniforme de Confiscaciones de 2011 – éste expresó "preocupación por definir la naturaleza *in rem* o civil de la confiscación".[43] Sobre este particular, indicó que "[a] efectos de evitar la más mínima confusión sobre los aspectos indicados, *es imprescindible introducir un lenguaje claro y preciso que establezca y mantenga distanciados los procesos criminales in personam y la confiscación a través de todo el texto de la ley*".[44] Precisamente, eso fue lo que hizo la Asamblea Legislativa en los Arts. 2, 8 y 15 de la Ley Núm. 119, supra, según expusimos.[45]

---

[43] Ponencia del Departamento de Justicia sobre el P. del S. 897 de 23 de julio de 2009, pág. 3.

[44] (Énfasis y subrayado nuestro). Íd.

[45] Consistentemente, ésta ha sido la posición del Poder Ejecutivo sobre este particular. A modo ilustrativo, hallamos que en una medida legislativa anterior dirigida a establecer la Ley Uniforme de Confiscaciones de 2006, se incluyeron disposiciones idénticas a las incluidas en la Ley Uniforme de Confiscaciones de 2011 en cuanto a la independencia del proceso de confiscación de cualquier otro proceso penal. Véase, e.g., Art. 8 del P. de la C. 2696, 15ta Asamblea Legislativa, 3ra Sesión Ordinaria. A raíz de esta propuesta el entonces Secretario de Justicia comentó lo siguiente:

Así las cosas, no hay duda que en la legislación actual se estableció un proceso civil *in rem* verdaderamente independiente al proceso penal *in personam*, abandonando así la pasada intención legislativa de vincular ambos procesos. Ante ello, resulta pertinente analizar si verdaderamente el proceso de confiscación confeccionado por el Poder Legislativo tiene un fin punitivo o criminal como se mencionaba en el pasado. De concluir que, en efecto, estamos ante un proceso de confiscación de carácter punitivo dirigido a castigar al presunto autor del delito, el marco de acción de la Asamblea Legislativa para regular su aplicación y procedencia podría verse limitado por aspectos

---

Los términos de esta medida reconocen las diferencias existentes entre el proceso de confiscación *in rem* y cualquier acción criminal, o de otra índole, que pueda proceder de los mismos hechos. *Se persigue que, por ejemplo, el Estado pueda proseguir legítimamente con una acción de confiscación contra una propiedad cuando existe prueba suficiente de que la misma ha sido utilizada en actividad delictiva, aun cuando el Estado instar una acción criminal porque no se ha identificado con la certeza suficiente al autor del delito. Nótese que el Estado debe establecer la ocurrencia de una actividad delictiva y su relación con la propiedad confiscada.*

La propuesta legislativa permite atender el absurdo jurídico que impide que el Estado pueda confiscar, por ejemplo, un automóvil con cristales ahumados cuando existe evidencia en su interior, tales como casquillos de bala, que lo vinculan directamente a la comisión de un delito. Nótese que, en este tipo de caso, el Estado conoce la ocurrencia de una actividad delictiva y del uso del vehículo en su consecución. No obstante, no necesariamente se ha identificado al autor del delito, toda vez que los cristales ahumados impiden su identificación.

*Ponencia del Departamento de Justicia de 24 de enero de 2006 sobre el P. de la C. 2696 ante la Comisión de lo Jurídico y Seguridad Pública de la Cámara de Representantes, pág. 4.*

constitucionales aplicables bajo ciertas y limitadas circunstancias.

Sobre este particular, en United States v. Ward, 448 US 242 (1980), la Corte Suprema de los Estados Unidos elaboró un estándar de dos partes dirigido, precisamente, a contestar si un estatuto confiscatorio constituye en sí una medida punitiva de índole criminal o no. Al respecto, la Corte Suprema Federal expresó lo siguiente:

> Esta Corte a menudo ha reiterado que la interrogante sobre si una sanción es de índole civil o criminal es un asunto de interpretación estatutaria. Nuestra investigación en este respecto se ha realizado tradicionalmente en dos esferas. Primero, nos hemos dado a la tarea de determinar si el Congreso al establecer la sanción particular indicó expresa o implícitamente su preferencia por una etiqueta o la otra. Segundo, si el Congreso ha indicado la intención de establecer una sanción civil, hemos investigado más a fondo si el esquema estatutario era tan punitivo ya sea en su propósito o en su efecto como negar dicha intención. Respecto a esta última interrogante, hemos establecido que solo "la más clara evidencia" podría ser suficiente para establecer la inconstitucionalidad de una ley basado en dicho argumento.[46]

---

[46] (Traducción nuestra). (Citas omitidas). United States v. Ward, supra, págs. 248-249. En términos propios de la Corte Suprema Federal, esta expresó específicamente lo siguiente:

> This Court has often stated that the question whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction. Our inquiry in this regard has traditionally proceeded on two levels. First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention. In regard to this latter inquiry, we have noted that "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground."

En otros términos, la conclusión sobre si determinada sanción es verdaderamente de índole civil o penal debe estar precedida, en primer orden, de un análisis sobre si el Poder Legislativo consignó su intención, ya sea expresa o implícitamente, de caracterizar ésta como una civil o criminal. Es decir, este primer punto del análisis va dirigido específicamente a identificar la etiqueta "civil" o "criminal" que le dio o pretendió dar el Poder Legislativo a la sanción concerniente. Claro está, de concluir que, en efecto, el Poder Legislativo expresó su preferencia por una sanción criminal, resulta académico cualquier análisis posterior.

Empero, si de ese análisis surge la intención del Poder Legislativo de caracterizar determinado procedimiento como civil, procede entonces abordar el segundo punto del examen dirigido a auscultar si ésta es tan punitiva en su propósito o efecto que transforma en una sanción criminal lo que se pretendió imponer como una sanción civil.[47] En esta segunda parte del análisis, es necesario que la parte que formule tal alegación presente *"la más clara evidencia"* de que lo que el Poder Legislativo denominó como civil en realidad constituye una sanción de índole criminal.[48] De no existir tal evidencia,

---

[47] Íd., pág. 249. (We turn then to consider whether Congress, despite its manifest intention to establish a civil, remedial mechanism, nevertheless provided for sanctions so punitive as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty.").

[48] (Traducción nuestra). Íd., pág. 249 ("In regard to this latter inquiry, we have noted that "only the clearest proof could suffice to

lo único que procede es que el Tribunal confirme el carácter civil que le brindó o pretendió brindar, en primera instancia, el Poder Legislativo a la sanción concerniente.

Subsiguientemente, la Corte Suprema de Estados Unidos reafirmó este análisis en United States v. Ursery, 518 US 267 (1996), caso en el cual confirmó su dictamen de United States v. One Assortment of 89 Firearms, 465 US 354 (1984) a los efectos de que un estatuto confiscatorio civil no viola la Quinta Enmienda de la Constitución Federal a aplicarse a un individuo que ha sido absuelto o condenado mediante sentencia, siempre y cuando éste no sea punitivo en su naturaleza.[49] Para sostener tal carácter civil de la confiscación, el Tribunal Supremo de los Estados Unidos examinó los estatutos confiscatorios concernientes mediante el discutido análisis de dos partes. Respecto a la primera parte, la Corte sostuvo que era indudable que el Congreso tuvo la intención de establecer un proceso meramente civil.[50] Siendo así, se movió a la segunda parte del análisis y concluyó que existía "poca evidencia, y mucho menos la prueba más clara requerida" de que el

---

establish the unconstitutionality of a statute on such a ground."); págs. 250-251 ("Nor are we persuaded by any of respondent's other arguments that he has offered the "clearest proof" that the penalty here in question is punitive in either purpose or effect."). Reiterado en United States v. One Assortment of 89 Firearms, 465 US 354, 366 (1984) ("Mulcahey has failed to establish by the "clearest proof" that Congress has provided a sanction so punitive as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty.").

[49] United States v. Ursery, supra, pág. 292. ("We hold that these *in rem* civil forfeitures are neither "punishment" nor criminal for purposes of the Double Jeopardy Clause.").

[50] Íd., págs. 288-290.

proceso de confiscación establecido por el Congreso era tan punitivo en su naturaleza o efecto que lo convertía en una sanción criminal.[51]

Para alcanzar tal conclusión, la Corte Suprema en United States v. Ursery, supra, destacó varios puntos importantes y pertinentes a nuestra legislación local. *Primero*, expresó el entendido de que las confiscaciones civiles *in rem* históricamente no constituyen un "castigo".[52] *Segundo*, resaltó que en los estatutos confiscatorios concernientes no se requería demostrar intención criminal en el uso de la cosa y aclaró que aun cuando éstos contienen una excepción de tercero inocente, ello de por sí no compele a la conclusión de que se desea castigar a una persona.[53] *Tercero*, señaló que si bien puede decirse que tales estatutos sirven un propósito disuasivo, la realidad es que tal objetivo es válido tanto para procesos de confiscación puramente civiles como para procesos criminales.[54] Finalmente, enfatizó que el solo hecho de que los estatutos confiscatorios estén atados o supeditados a una actividad criminal no es suficiente para establecer mediante "la más clara evidencia" que el

---

[51] (Traducción nuestra). Íd., pág. 290.

[52] Íd., pág. 291.

[53] Íd., págs. 291-292.

[54] Íd., pág. 292.

proceso denominado como civil realmente es de carácter punitivo en su naturaleza o efecto.[55]

Al extrapolar tal análisis y escrutinio a nivel local con el objetivo de auscultar si el proceso de confiscación establecido en la Ley Uniforme de Confiscaciones de 2011 constituye una sanción meramente civil o penal, no podemos alcanzar otra conclusión que no sea que ésta es *puramente civil y remediativa*. En primer lugar, según indicáramos, no hay duda de que la Asamblea Legislativa aprobó la legislación vigente con la intención expresa de establecer un proceso *administrativo in rem* de estricto carácter civil e independiente de cualquier otra acción de naturaleza penal, administrativa o de cualquier otra naturaleza. En ese sentido, y cónsono con la jurisprudencia federal sobre el particular, notamos que los demandantes en el caso de epígrafe no presentaron argumento alguno – mucho menos "la más clara evidencia" – que pusiera en posición a este Tribunal para determinar que, a pesar de la clara intención del Poder Legislativo de establecer un proceso estrictamente civil, éste debía ser cualificado como uno punitivo en su naturaleza o efecto.

En segundo lugar, - y a pesar de tal falla en la argumentación de los demandantes -  la realidad es que un simple repaso de la legislación concerniente evidencia la inexistencia de "la más clara evidencia" que nos lleve a

---

[55] Íd.

concluir que, en efecto, estamos ante un estatuto de carácter punitivo. Nótese que la ley vigente no requiere demostrar que hubo intención criminal por parte de la persona que utilizó la cosa de forma ilícita para que proceda la confiscación. Como explicáramos, en el proceso civil estatuido únicamente se requiere demostrar la conexión entre la propiedad confiscada y su uso en una actividad prohibida por ley, independientemente de quién la utilizó o si tenía tal intención o no.

Además, aunque la legislación vigente podría permitir que se presente evidencie de la inocencia del dueño en ciertas circunstancias, esto, por sí solo, no es suficiente para atribuirle a la legislación un ánimo de castigar. Por último, la clara intención de la Asamblea Legislativa de disuadir la actividad criminal, según surge de la ley y de su historial, obligan a concluir que estamos ante una ley de naturaleza civil y remediativa. Como bien señalara la Corte Suprema de Estados Unidos, tal elemento disuasivo de la actividad criminal no es en sí suficiente para categorizar un proceso civil de confiscación como uno criminal.

## II

De los hechos reseñados en la Sentencia que antecede surge que el Estado confiscó un vehículo de motor porque presuntamente éste fue utilizado en una actividad delictiva. A raíz de estos mismos hechos, el Estado optó, además, por presentar cargos criminales en contra de las

dos personas ocupantes de la propiedad confiscada al momento de la intervención. No obstante, en lo que respecta a uno de los ocupantes, el proceso penal culminó luego de que el Tribunal determinara no causa probable para acusar durante una vista preliminar en alzada. Mientras que los cargos contra el otro ocupante del vehículo de motor fueron archivados a tenor con el inciso (b) de la Regla 247 de Procedimiento Criminal luego de que el Ministerio Público informara que toda la evidencia con la que contaba había sido suprimida. En ese escenario, surge la interrogante de qué sucede con la confiscación de la propiedad una vez la persona que presuntamente la utilizó para la comisión de un delito obtiene un resultado favorable en el proceso penal, aun cuando el mismo no haya sido producto de una deliberación y adjudicación en los méritos.[56]

Tal cuadro fáctico no es un asunto novedoso para este Tribunal, ya que en el pasado emitimos varias opiniones que, precisamente, concernían a un conjunto de hechos igual o similar al que hoy consideramos. Como vimos, en ese entonces, y aún bajo las disposiciones de las

---

[56] Cuando indicamos que el resultado favorable en lo penal no se obtuvo como parte de una determinación en los méritos, nos referimos a que en el proceso criminal nunca se dilucidó si, en efecto, la persona imputada cometió un delito o no. Esto porque la determinación a su favor se produjo como consecuencia de factores ajenos a la controversia principal sobre si incurrió en una conducta delictiva. Este es el caso, por ejemplo, cuando el imputado sale favorecido porque el Ministerio Público no cumple con los términos estatutarios de juicio rápido. La desestimación de los cargos que ese incumplimiento generalmente acarrea no significa que la persona no cometió delito. Simplemente, equivale a que el Ministerio Público incumplió con el proceso y los términos establecidos en las Reglas de Procedimiento Criminal.

derogadas Ley Uniforme de Confiscaciones de 1960 y 1988, resolvimos que no podía sostenerse la confiscación civil de la propiedad en la medida que la persona imputada de delito por los mismos hechos que originaron la confiscación hubiese obtenido un dictamen favorable en la esfera criminal. Así las cosas, en el pasado utilizamos el resultado penal para disponer, incluso sumariamente, de una demanda civil de impugnación de confiscación.

Ahora bien, según reseñáramos, las pasadas determinaciones de este Tribunal estuvieron enmarcadas en lo que hasta el momento era la voluntad e intención expresada por la Asamblea Legislativa. Como observáramos, a pesar de que bajo la legislación de 1988 se reconocía el carácter *in rem* de las confiscaciones, el Poder Legislativo afirmativamente acogió el matiz *in personam* que por varias décadas este Tribunal le otorgó al procedimiento *in rem* al condicionar la continuación del proceso de confiscación a los acontecimientos a nivel penal.[57]

Esto contrasta enormemente con la actual Ley Uniforme de Confiscaciones de 2011. En esta, la Asamblea Legislativa, conociendo la interrelación que en el pasado establecimos entre el proceso civil y el proceso penal, específicamente consignó su voluntad de diferenciar las acciones criminales dirigidas contra la persona de aquellas acciones confiscatorias a nivel civil dirigidas

---

[57] Véase, parte III, sección B de esta Opinión.

contra la propiedad en particular. Esta intención legislativa, según expuesto en la sección anterior, surge de cada parte del historial legislativo de la Ley Núm. 119, incluyendo del propio texto de la ley, de su exposición de motivos, de los informes de las respectivas comisiones legislativas, e incluso de las ponencias presentadas.[58]

Así, por ejemplo, el Art. 2 de la ley vigente claramente establece que en nuestra jurisdicción las confiscaciones serán de naturaleza *in rem* y, como consecuencia, independientes de cualquier otra acción de naturaleza penal, administrativa o de otra índole que pudiera llevarse en contra del dueño o del poseedor de los bienes ocupados.[59] Este principio de separabilidad e independencia fue reiterado más adelante por el Poder Legislativo al expresar literalmente – *y por primera vez como parte integral de la legislación en claro contraste con las leyes anteriores* - su intención de mantener la confiscación civil separada del procedimiento criminal y dirigida exclusivamente a dilucidar el involucramiento del bien confiscado en una actividad prohibida por ley.[60] De esta manera, no hay duda de que la Asamblea Legislativa pretendió distanciarse del desarrollo jurisprudencial bajo el cual el proceso civil de confiscación quedaba

---

[58] Véase, parte III, sección C de esta Opinión.

[59] Véase, Art. 2 de la Ley Núm. 119, supra.

[60] Véase, Art. 8 de la Ley Núm. 119, supra.

condicionado al resultado de la causa criminal contra el alegado autor del delito. Cónsono con ese claro distanciamiento, el Poder Legislativo, modificó el enfoque y estableció un procedimiento civil verdaderamente *in rem* cónsono a sus típicas características e independencia de cualquier otro proceso que pueda surgir del mismo conjunto de hechos.[61]

Bajo esas circunstancias, utilizar el resultado favorable obtenido por el imputado en el proceso penal para aplicar la doctrina de impedimento colateral por sentencia en el proceso civil de confiscación, sería ir en contra de la voluntad legislativa diáfanamente expresada en la Ley Uniforme de Confiscaciones de 2011. Después de todo, eso fue lo que, precisamente, quiso evitar el legislador al disponer sobre la independencia de los procedimientos y reiterar una y otra vez la naturaleza estrictamente *in rem* de la confiscación en nuestra jurisdicción.

Más allá de ese ejercicio válido de establecimiento de política pública, la realidad es que tal independencia entre el proceso civil de confiscación y la acción penal tiene perfecta lógica y congruencia jurídica.[62] Esto porque al final de todo se tratan de dos acciones judiciales que

---

[61] Véase, Parte I, Sección A de esta Opinión.

[62] Así ha sido reconocido, incluso, por el Tribunal Supremo de los Estados Unidos en multiplicidad de casos aún vigentes. Véase, e.g., Bennis v. Michigan, 516 US 442, 452 (1996); United States v. One Assortment of 89 Firearms, 465 US 354 (1984); Calero-Toledo v. Pearson Yatch Leasing Co., 416 US 663 (1974); Goldmith-Grant Co. v. United States, 254 US 505 (1921).

- si bien surgen de un mismo conjunto de hechos - responden a fines y cuestionamientos distintos bajo diferentes estándares de prueba. Por un lado, la acción civil de confiscación lo que busca es establecer mediante preponderancia de la prueba que la propiedad confiscada fue utilizada en una actividad prohibida por ley. Mientras que la acción penal busca establecer más allá de duda razonable que el imputado o acusado cometió un delito. En tales circunstancias, es jurídicamente sostenible no condicionar la acción civil de confiscación a lo que acontezca en la acción penal. Tan es así que nuestro ordenamiento jurídico actual no establece que la confiscación de una propiedad va a depender de la presentación de cargos criminales y mucho menos de la obtención de una sentencia condenatoria a nivel penal.[63]

Ciertamente, y contrario a lo que sostienen los compañeros miembros de este Foro en sus respectivas opiniones disidentes, estas distinciones no alteran nuestra bien concebida norma de que las confiscaciones no

---

[63] De hecho, esta posibilidad fue descartada, incluso, como parte de los debates suscitados durante la Convención Constituyente de Puerto Rico. III Diarios de Sesiones de la Convención Constituyente de Puerto Rico, 1569-1581 (1961). Cónsono con ello, puede haber ocasiones en que el Estado simplemente no tenga conocimiento de quién utilizó la propiedad en una actividad ilegal, pero como cuestión de hecho sí se sabe que fue utilizada con tales propósitos. Tal sería el caso, por ejemplo, de un automóvil abandonado con sustancias controladas en su interior. Ante tal hallazgo, no hay duda de que la propiedad fue empleada en la comisión de una actividad ilegal (almacén o transporte de sustancias controladas), pero por estar abandonada el Estado desconoce quién la utilizó para ello. ¿Supone ese desconocimiento del autor del delito un impedimento para que el Estado pueda confiscar la propiedad? No. Esto porque, como hemos explicado, bajo la modalidad civil de confiscación la pregunta no es quién utilizó la propiedad, sino si la propiedad, en efecto, fue utilizada en una actividad ilegal.

son favorecidas por los tribunales y, como consecuencia, los estatutos confiscatorios deben interpretarse restrictivamente.[64] Ahora bien, los tribunales estamos autorizados a interpretar una legislación cuando "esta no es clara o concluyente sobre un punto en particular".[65] De ese ser el caso, "debemos siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobar una legislación, de manera que nuestra interpretación asegure la efectividad de la intención legislativa".[66] De esta forma evitamos una interpretación contraria a esa intención y, por ende, una usurpación al Poder Legislativo.

En el caso particular de la Ley Uniforme de Confiscaciones de 2011, la Asamblea Legislativa fue clara y categórica sobre su propósito de establecer como política pública una separación e independencia entre el proceso civil de confiscación y la causa penal que podría producirse a consecuencia de los mismos hechos. Teniendo ese propósito claro, ¿sería cónsono con el mismo utilizar el resultado favorable obtenido por el imputado para disponer y anular la confiscación? ¿Estaría conforme a la

---

[64] Coop. Seg. Mult. v. E.L.A., supra, pág. 668; Del Toro Lugo v. E.L.A., supra, pág. 988; Suárez v. E.L.A., supra, pág. 64; Carlo v. Srio. de Justicia, supra, pág. 363; Pueblo v. González Cortes, 95 DPR 164, 168 (1967).

[65] Brau, Linares v. ELA, 190 DPR 315, 340 (2014); Rivera Fernández v. Mun. de Carolina, 190 DPR 196, 202 (2014); Consejo Titulares v. Gómez Estremera, 184 DPR 407 (2012), citando a Pueblo v. Ortega Santiago, 125 DPR 203, 214 (1990).

[66] Romero Barceló v. E.L.A., 169 DPR 460, 500-501 (2006); Rexach v. Ramírez Vélez, 162 DPR 130 (2004), citando a Pérez v. Mun. de Lares, 155 DPR 697, 706-707 (2001).

voluntad legislativa continuar el desarrollo jurisprudencial de este Tribunal en el cual la procedencia de la confiscación estaba condicionada a lo que aconteciera a nivel penal?

Indudablemente, no. Sería un contrasentido establecer por un lado que los procesos son independientes y, por el otro, interrelacionarlos de tal manera que lo que ocurra en uno predetermine el desenlace del otro. Ante tales circunstancias, *y en ausencia de un planteamiento constitucional válido y aplicable al escenario específico que hoy atendemos*, este Foro no debe alterar las normas estatutarias aplicables a los casos ante nuestra consideración. Así, tenemos el deber de reafirmar el legítimo ejercicio de establecimiento de política pública promovido por la Asamblea Legislativa mediante la aprobación de la Ley Uniforme de Confiscaciones de 2011.

Si bien es cierto que la actual ley de confiscaciones no incluye una disposición sobre la doctrina de impedimento colateral por sentencia - tal y como se incluyó en su momento mediante la derogada Ley Núm. 32-2000 - la realidad es que su aplicación a los casos que hoy atendemos es *completa y absolutamente incompatible* con varias de las disposiciones que sí fueron incluidas en la Ley.[67] En ese sentido, los tribunales no podemos utilizar

---

[67] Véase, Arts. 2, 8 y 15 de la Ley Núm. 119, supra, los cuales, como discutimos en secciones anteriores, dejan claro la voluntad de la Asamblea Legislativa de establecer un proceso civil de confiscación independiente de lo acontecido a nivel penal. Esto, indudablemente, no brinda espacio para otra interpretación estatutaria que no sea la inaplicabilidad de la doctrina de impedimento colateral por sentencia

nuestra función interpretativa para distanciarnos e invalidar el *contenido expreso y claro* de una ley bajo el pretexto de que el legislador no incluyó determinado lenguaje. Después de todo, nuestro deber no es juzgar cómo el legislador debió expresar su intención legislativa, sino auscultar si determinada interpretación y resultado es compatible con la voluntad del legislador reflejada en la letra de la ley. Conforme a ello, no hay duda de que validar la aplicación de la doctrina de impedimento colateral por sentencia, la aplicación de cualquier otra doctrina de índole estatutaria o continuar reconociendo presuntas excepciones a la independencia de que debe caracterizar el proceso *in rem* de confiscación o, incluso, pretender alcanzar un resultado basado en aspectos constitucionales no aplicables a los hechos particulares que evaluamos, constituiría un ejercicio impropio de *legislación judicial* en la medida que ignora y menoscaba las disposiciones incluidas en la Ley Uniforme de Confiscaciones de 2011.[68]

Por todo lo anterior, este Tribunal debió concluir que los tribunales no pueden disponer de la acción civil de confiscación basados *exclusivamente* en el resultado obtenido por el imputado a nivel penal. Conforme a las

---

o de cualquier otra doctrina que condicione la continuación de la confiscación al resultado de otro procedimiento.

[68] Ello sin mencionar las posibles incongruencias jurídicas que sustantivamente supone la aplicabilidad de esta doctrina en el contexto de un proceso civil de confiscación basado en lo acontecido en un proceso de índole penal, el cual, en muchas ocasiones, ni tan siquiera concluye mediante una *sentencia* luego de un proceso adjudicativo en sus méritos.

disposiciones de la Ley Uniforme de Confiscaciones de 2011, la procedencia de la confiscación debe ser adjudicada a nivel civil por preponderancia de la prueba y en completa independencia de lo que haya acontecido a nivel penal. Así que, en ausencia de algún otro planteamiento procedente en derecho, los foros primarios deberían dilucidar las demandas civiles de impugnación de confiscación en sus méritos, conforme al proceso delineado por la Asamblea Legislativa en la legislación vigente.

Claro está, no siempre la determinación del foro primario en una demanda de impugnación de confiscación estará basada en su adjudicación en los méritos. En ese sentido, los tribunales podrían resolver este tipo de pleito utilizando todos los mecanismos disponibles bajo nuestras Reglas de Procedimiento Civil, incluso disponer del mismo por la vía sumaria, si así procede en derecho. Ahora bien, la disposición del recurso no puede descansar en el mero resultado favorable obtenido por el imputado a nivel penal, como ocurría en el pasado bajo la derogada Ley Uniforme de Confiscaciones de 1988. Si la parte demandante interesa obtener un dictamen sumario, por ejemplo, deberá entonces ubicar en posición al tribunal sobre su procedencia, pero su petición no puede basarse exclusivamente en la obtención de un dictamen favorable en la causa criminal.

**III**

Por lo fundamentos antes expuestos, estoy conforme con la determinación alcanzada por el Tribunal de Apelaciones, la cual hoy confirmamos por disposición reglamentaria al encontrarse igualmente dividido los miembros de este Tribunal.


                                        Edgardo Rivera García
                                          Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Mapfre Praico Insurance Company, Reliable Financial Services, Inc.<br><br>Peticionarios<br><br>y Waldemar R. Santiago Ramos y Fulano de Tal<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, representado por el Secretario de Justicia<br><br>Recurrido | CC-2013-1077 | |

Opinión Disidente emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 18 de marzo de 2016

I

Dados los efectos nocivos que acarrearán las sentencias que hoy certifica este Tribunal, producto de la artificiosa prolongación, mediante la celebración de una vista oral innecesaria,[69] de una controversia sobre la cual los jueces que componemos este Tribunal habíamos ya formulado un criterio, me veo obligada a expresarme nuevamente.

Hoy, este Tribunal, por estar igualmente dividido, certifica dos sentencias confirmando los dictámenes recurridos en los casos *Banco Bilbao Vizcaya v. E.L.A.,*

---

[69] Para una pormenorización de las razones en virtud de las cuales la vista oral celebrada el 1 de marzo de 2016 fue *innecesaria*, véase *Banco Bilbao Vizcaya et al. v. E.L.A.,* 2015 T.S.P.R. 152, 194 D.P.R. __ (2015) (Rodríguez Rodríguez, J., Voto Particular Disidente).

CC-2012-0767, y *Mapfre Praico Ins. Co. v. E.L.A.*, CC-2013-1077. Ello, luego de la celebración de una vista oral superflua que, evidentemente, no contribuyó en lo absoluto a la consecución de algún consenso, como ya habíamos adelantado. Más aún, es menester señalar que, si la vista en cuestión no se hubiese celebrado, este Tribunal hubiera estado en posición de resolver de una vez y por todas, la controversia común que comparten los referidos casos. Y es que el 10 de noviembre de 2015, día en que se certificó la resolución que dispuso para la celebración de la vista oral, este Tribunal estaba compuesto por nueve jueces, ocho de los cuales habíamos emitido por escrito un criterio sobre el caso de epígrafe el cual era contrario a la posición que en aquel entonces había propuesto el Juez ponente. Existiendo por lo tanto una posición mayoritaria sobre el curso a seguir en estos casos, el "retiro artificial" de la fallida ponencia y la convocatoria *in articulo mortis* a una vista oral, solo ha servido para: dilatar aún más la solución de estos casos y de las decenas de casos similares que penden ante nuestro Tribunal, el Tribunal de Apelaciones y el Tribunal de Primera Instancia; para obligar a las partes a incurrir en costes adicionales innecesarios, y para propiciar la incertidumbre jurídica sobre el alcance de una ley que genera amplia litigación en nuestros tribunales. En fin, la actuación que censuramos en aquel momento apunta a una no muy eficaz y feliz administración

de la Justicia. Véase *Banco Bilbao Vizcaya et al. v. E.L.A.*, 2015 T.S.P.R. 152, 194 D.P.R. __ (2015) (resolución).

Reitero, nos parece lamentable que debido a un inopinado retraso, carente de justificación jurídica, se sancione un pasmoso estado de incertidumbre en los foros inferiores. Es decir, ante las sentencias que hoy suscribe este Tribunal, tanto el Tribunal de Primera Instancia, como el Tribunal de Apelaciones, no tendrán una guía clara de cómo atender controversias análogas. Asimismo, con tal proceder, este Tribunal desatiende una de sus funciones medulares: pautar el derecho en nuestra jurisdicción. Ante una situación como ésta, pues, le competerá a la Legislatura tomar cartas en el asunto y disponer la solución definitiva a la que no pudo llegar este Tribunal.

En vista de lo anterior, reitero mi criterio de que la vista oral en el caso de epígrafe fue *patentemente innecesaria* y, peor aún, sancionó veladamente un estado de incertidumbre en los foros inferiores, al dilatar la disposición definitiva del caso que nos atañe.

II

Por último, en cuanto a los méritos de la controversia que este Tribunal hoy rehúye resolver, baste con señalar que ésta ya fue resuelta definitivamente en *Coop. Seg. Mult. v. E.L.A.*, 180 D.P.R. 655 (2011). En aquella ocasión, este Tribunal determinó, sin ambages, que

"[a]l amparo de nuestras interpretaciones constitucionales, y cónsono con la normativa federal vigente, hemos vinculado el resultado del proceso civil de confiscación al desenlace de la causa criminal contra la persona imputada del delito a base del cual se justifica la confiscación". *Id.* en la pág. 680 (2011).[70] Ello, pues, debería ser suficiente para disponer de la controversia planteada por el peticionario. Máxime, cuando lo resuelto por este Tribunal en *Coop. Seg. Mult.* se fundamentó en consideraciones constitucionales, aun cuando éstas no hayan sido explicitadas.

III

En vista de lo anterior, *disiento*.

Anabelle Rodríguez Rodríguez<br>Juez Asociada

---

[70] Conviene recordar que cuatro de los ochos jueces que actualmente componen este Tribunal estuvieron conformes con lo resuelto en *Coop. Seg. Mult.*