TOYOTA CREDIT y UNIVERSAL INSURANCE COMPANY, recurridos, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, peticionario.

*Número:* CC-2014-0845      *Resuelto:* 28 de marzo de 2016

*Tanaira Padilla Rodríguez* y *Karla Z. Pacheco Álvarez*, subprocuradoras generales, y *María Astrid Hernández Martín*, procuradora general auxiliar; *Annette M. Prats Palerm*, abogada de la parte recurrida.

## SENTENCIA

El 4 de octubre de 2012, la Policía de Puerto Rico ocupó un vehículo Toyota "Yaris", dado que éste presuntamente fue utilizado en violación al artículo 404 de la Ley de *Sustancias Controladas* de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971 (24 LPRA sec. 2404), y el Artículo 21 de la Ley para la Protección de la Propiedad Vehicular de 1987, Ley Núm. 8 de 5 de agosto de 1987 (9 LPRA sec. 3220). Luego de los trámites de rigor, el Estado Libre Asociado de Puerto Rico (ELA) confiscó el vehículo en cuestión.

Así las cosas, el 9 de noviembre de 2012, Universal Insurance Company (Universal), quien adquirió los derechos sobre el vehículo confiscado, presentó una demanda de impugnación de confiscación ante el foro primario. Acaecidas varias incidencias procesales, Universal presentó una moción de sentencia sumaria. En ésta, adujo que, debido a que la acción penal relacionada a los hechos que motivaron la confiscación no prosperó, procedía declarar "con lugar" la demanda de impugnación de confiscación.

El ELA, por su parte, se opuso. Por lo tanto, señaló que el carácter *in rem* de la confiscación en nuestra jurisdicción, así como la independencia de esta con relación a cualquier otro procedimiento eran razones suficientes para declarar "sin lugar" la moción presentada por Universal. Ello, en virtud de los Artículos 8 y 15 de la Ley Uniforme de Confiscaciones de 2011 (34 LPRA secs. 1724e y 1724l). Asimismo, el ELA señaló que Universal no rebatió la presunción de legalidad y corrección que dispone dicho estatuto.

El 18 de febrero de 2014, el foro primario emitió una sentencia para declarar "con lugar" la demanda de impugnación de confiscación presentada por Universal. El ELA, inconforme, recurrió ante el Tribunal de Apelaciones. El foro apelativo intermedio, por su parte, confirmó la sentencia recurrida.

En consideración a lo anterior, el 6 de octubre de 2014, el ELA acudió ante este Foro. En esencia, planteó que el resultado favorable en la acción penal relacionada a los hechos que motivaron la confiscación no permite disponer sumariamente de la demanda de impugnación de confiscación presentada por Universal. Este Tribunal, por su parte, expidió el recurso en cuestión.

Evaluados los argumentos presentados por las partes, y estando el Tribunal igualmente dividido, *se dicta sentencia y se confirma el dictamen del foro apelativo intermedio cuya revisión nos fue solicitada.*

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada Señora Rodríguez Rodríguez emitió una Opinión de conformidad. La Jueza Presidenta Oronoz Rodríguez hizo constar la expresión siguiente:

> Estoy conforme por entender que procedía declarar "con lugar" la demanda de impugnación de confiscación y ordenar la devolución del vehículo. Ello, en vista de que la causa penal relacionada con la confiscación no prosperó.

La Jueza Asociada Señora Pabón Charneco hizo constar la expresión siguiente:

> Estoy conforme con el dictamen emitido por este Tribunal por los fundamentos esbozados en mi Opinión de conformidad en *Bco. Bilbao Vizcaya et al. v. ELA*, 195 DPR 39 (2016).

El Juez Asociado Señor Estrella Martínez hizo constar la expresión siguiente:

> Estoy conforme con el dictamen emitido por este Tribunal por los fundamentos contenidos en mi Voto particular disidente emitido en *Bco. Bilbao Vizcaya et al. v. ELA et al.*, 194 DPR 116, 149 (2015).

El Juez Asociado Señor Martínez Torres disintió del resultado por los fundamentos expuestos en la Opinión disidente del Juez Asociado Señor Rivera García en *Bco. Bilbao Vizcaya et al. v. ELA*, 195 DPR 39 (2016), y en su Opinión de conformidad en *Mapfre Praico Ins. et al. v. ELA*, 195 DPR 86 (2016). El Juez Asociado Señor Kolthoff Caraballo disintió por las razones esbozadas en la Opinión disidente del Juez Asociado Señor Rivera García en *Bco. Bilbao Vizcaya et al. v. ELA*, 195 DPR 39 (2016).

El Juez Asociado Señor Rivera García hizo constar la expresión siguiente:

> Disiento de la sentencia que antecede por los fundamentos que expuse en la Opinión disidente que emití en *Bco. Bilbao Vizcaya et al. v. ELA*, 195 DPR 39 (2016).

El Juez Asociado Señor Feliberti Cintrón hizo constar que disiente del resultado alcanzado por los fundamentos expuestos en la Opinión disidente del Juez Asociado Señor Rivera García en *Bco. Bilbao Vizcaya et al. v. ELA*, 195 DPR 39 (2016), y en su Opinión de conformidad en *Mapfre Praico Ins. et al. v. ELA*, 195 DPR 86 (2016).

(*Fdo.*) Juan Ernesto Dávila Rivera
*Secretario del Tribunal Supremo*

— O —

Opinión de conformidad emitida por la Juez Asociada Señora Rodríguez Rodríguez.

> "[I] disapprove of confiscations. If some have insisted that they were a restraint to vengeance, and the violence of particulars, they have not reflected, that though punishments be productive of good, they are not, on that account, more just; to be just, they must be necessary. Even an useful injustice can never be allowed by legislator [...]
>
> The law which ordains confiscations, sets a price on the head of the subject, with the guilty punishes the innocent, and by reducing them to the indigence and despair, tempts them to become criminal".[1]

En esta ocasión, nos corresponde dirimir la relación entre un procesamiento penal y un proceso civil de confiscación cuando ambos se relacionan con un mismo núcleo de hechos. En particular, debemos dilucidar la aplicación de la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia, en un proceso civil de impugnación de confiscación al amparo de las disposiciones de la Ley Uniforme de Confiscaciones de 2011, 34 LPRA secs. 1724–1724w. Esto, cuando la causa penal relacionada con los hechos que motivan la confiscación no prospera.[2]

---

[1] C. Beccaria, *An Essay on Crimes and Punishments* 59 (1775) (International Pocket Library, 2da ed., 1992).

[2] De entrada, conviene destacar que la controversia puntual que le compete resolver a este Tribunal se refiere a todas aquellas instancias en que el encausamiento penal de determinada persona no prospera y existe un proceso de confiscación concomitante a los mismos hechos que, en primer lugar, suscitaron el procesamiento penal. Por lo tanto, por ser innecesario, no nos expresaremos en torno a los posibles efectos que pudiera tener una absolución sobre un proceso de confiscación bajo el esquema estatutario establecido en virtud de la Ley Uniforme de Confiscaciones de 2011.

# I

El 4 de octubre de 2012, la Policía de Puerto Rico ocupó un vehículo Toyota "Yaris" por presuntamente haber sido utilizado en contravención al Artículo 404 de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, 24 LPRA sec. 2404, y del Artículo 21 de la Ley para la Protección de la Propiedad Vehicular de 1987, Ley Núm. 8 de 5 de agosto de 1987, 9 LPRA sec. 3220.[3] El Estado Libre Asociado de Puerto Rico (ELA) emitió las notificaciones de rigor y procedió a confiscar el vehículo de motor.

El 9 de noviembre de 2012, la recurrida —Universal Insurance Company (Universal), cesionaria de los derechos sobre el vehículo en cuestión— presentó una demanda de impugnación de confiscación ante el Tribunal de Primera Instancia. Luego de varios trámites procesales, el 12 de julio de 2013, Universal presentó una moción de sentencia sumaria. En ésta alegó que, dado que la causa penal relacionada con los hechos que motivaron la confiscación no prosperó, procedía declarar "con lugar" la demanda de impugnación de confiscación. Esto es, en función de las circunstancias particulares de este caso, la determinación de "no causa para acusar" en la vista preliminar en alzada habría de surtir efectos sobre el proceso civil de confiscación.

El ELA, por su parte, se opuso. Entre otros particulares, señaló que los Artículos 8 y 15 de la Ley Uniforme de Confiscaciones de 2011, 34 LPRA secs. 1724e y 1724*l*, establecían expresamente el carácter *in rem* del proceso civil de confiscación y su total independencia con relación a cual-

---

[3] Valga señalar que el Artículo 404 de la Ley de Sustancias Controladas de Puerto Rico tipifica como delito la posesión de sustancias controladas. El Artículo 21 de la Ley para la Protección de la Propiedad Vehicular, por su parte, tipifica como delito la mutilación, alteración, destrucción o modificación de determinadas piezas de un vehículo de motor.

quier otro procedimiento relacionado con los mismos hechos. Además, el ELA solicitó la desestimación de la demanda, puesto que la recurrida no había presentado prueba que rebatiera la presunción de corrección y legalidad de la confiscación que establece la Ley Uniforme de Confiscaciones de 2011.

El 18 de febrero de 2014, el Tribunal de Primera Instancia dictó sentencia a favor de la recurrida. Por lo tanto, razonó que la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia, era aplicable y que la desestimación de la acción penal relacionada a los mismos hechos que motivaron la confiscación impugnada permitía disponer sumariamente de ésta.

Inconforme, y luego de haber presentado oportunamente una moción de reconsideración en el foro primario, el 2 de junio de 2014, el ELA recurrió al Tribunal de Apelaciones. Ante dicho foro, replicó los argumentos esgrimidos anteriormente, a los efectos de que la aplicación de la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia, era contraria a las disposiciones de la Ley Uniforme de Confiscaciones de 2011. La recurrida, por su parte, reafirmó que la doctrina de cosa juzgada en la referida modalidad era aplicable al caso en cuestión. Asimismo, ésta resaltó el carácter punitivo de este tipo de proceso y adujo que el mismo debería entenderse como una excepción al mandato constitucional que prohíbe la toma de propiedad privada para fines públicos sin justa compensación.

El foro apelativo intermedio confirmó el dictamen recurrido. Razonó, pues, que, conforme lo resuelto por este Tribunal en *Ford Motor v. E.L.A.*, 174 DPR 735, 742 (2008), aplicaba la doctrina en cuestión y, en consecuencia, procedía declarar "con lugar" la demanda de impugnación de la confiscación cuando el proceso penal relacionado con ésta no prospera.

El 6 de octubre de 2014, el ELA recurrió ante este Tribunal e hizo el señalamiento de error siguiente:

> Erró el Tribunal de Apelaciones al utilizar el resultado favorable del acusado en el caso criminal como fundamento para confirmar el dictamen del Tribunal de Primera Instancia declarando con lugar la demanda impugnando la confiscación bajo la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia, a pesar de las disposiciones contenidas en la Ley Uniforme de Confiscaciones de 2011, que expresamente establecen la independencia de la acción civil confiscatoria de la acción penal.

Habiendo repasado los hechos medulares del caso que nos ocupa, procede examinar las normas pertinentes con tal de dirimir la relación entre un proceso penal y un proceso civil de confiscación, cuando ambos se relacionan con los mismos hechos. Esto, al amparo de la Ley Uniforme de Confiscaciones de 2011, según enmendada.

## II

## A

La *confiscación* es el acto en virtud del cual el Estado se apropia de bienes que han sido utilizados en la comisión de algún delito debidamente tipificado en el Código Penal o en leyes especiales que dispongan expresamente para ello. *Díaz Ramos v. E.L.A. y otros*, 174 DPR 194, 202 (2008); *Centeno Rodríguez v. E.L.A.*, 170 DPR 907 (2007); *First Bank v. E.L.A.*, 164 DPR 835, 842 (2005); *Suárez v. E.L.A.*, 162 DPR 43, 51 (2004); *Cooperativa v. E.L.A.*, 159 DPR 37, 43 (2003); *Del Toro Lugo v. E.L.A.*, 136 DPR 973, 980–981 (1994). Por otra parte, la doctrina reconoce dos modalidades a través de las cuales el Estado puede llevar a cabo la confiscación, a saber: mediante una *acción "in personam"* o una *acción "in rem"*. *Suárez*, supra, págs. 51–52.

En lo que respecta a la primera de estas modalidades, la *acción "in personam"* —conocida, también, como "confiscación criminal"— permite que el Estado "impon[ga] la confiscación como *una pena adicional"* contra el imputado de determinado delito si este resultara convicto. (Énfasis en el original). *Del Toro Lugo,* supra, pág. 981. Así, bajo esta modalidad, "[l]a confiscación [...] forma parte integral del procedimiento criminal contra el propietario de la cosa a ser incautada, y la convicción de éste es, precisamente, el fundamento que origina la confiscación". Íd., págs. 981–982.

Por otro lado, se le reconoce al Estado la prerrogativa de articular el proceso de confiscación como una acción *in rem* —conocida como "confiscación civil"—.([4]) Bajo este supuesto, "[e]l procedimiento de confiscación va dirigido contra la cosa (*in rem*), y no contra el dueño [...]". *Del Toro Lugo,* supra, pág. 987. Véase *Cooperativa,* supra, pág. 43. Es decir, "[s]e trata de una ficción jurídica mediante la cual —en cierta medida— se culpa a la propia cosa por su participación en el delito. El derecho del Estado de tomar posesión de la cosa surge del mal uso que se le haya dado a ésta". *Suárez,* supra, pág. 52. Asimismo, este tipo de confiscación se conceptúa como "independiente de la acción penal que la motivó". (Citas omitidas). *Cooperativa,* supra, pág. 44.

Es menester señalar que, en cuanto a esta modalidad de confiscación, "la naturaleza *in rem* de la acción no la desviste de su condición esencialmente punitiva y de infligir castigo". *Ochoteco v. Tribunal Superior,* 88 DPR 517, 528 (1963). Tal carácter punitivo ha sido consecuentemente reiterado por la jurisprudencia de este Tribunal. Véanse: *Mapfre v. ELA,* 188 DPR 517, 525 (2013); *Coop. Seg. Múlt. v.*

---

([4]) Para un breve recuento histórico sobre el surgimiento de la confiscación civil, es decir, la modalidad *in rem* de confiscación, véanse: M. Van den Berg, *Proposing a Transactional Approach to Civil Forfeiture Reform,* 163 U. Pa. L. Rev. 867, 872–878 (2015); J. Gurulé, *Introduction: The Ancient Roots of Modern Forfeiture Law,* en *Symposium: Federal Asset Forfeiture Reform,* 21 J. Legis. 155, 156–157 (1995).

*E.L.A.*, 180 DPR 655, 663–664, 668, 680 (2011); *Ford Motor*, supra, págs. 738, 741; *Centeno Rodríguez*, supra, pág. 913; *Del Toro Lugo*, supra, págs. 986–987 y 992–993; *Carlo v. Srio. de Justicia*, 107 DPR 356, 362 (1978); *Pueblo v. González Cortés*, 95 DPR 164, 168 (1967), citando a *Ochoteco; Plymouth Sedan v. Pennsylvania*, 380 US 693 (1965).[5] Esto, puesto que "la confiscación no sólo tiene la intención de evitar que el vehículo o la propiedad confiscada pueda volve[r] a utilizar[se] para fines ilícitos, sino que también sirve de castigo para disuadir a los criminales". *Centeno Rodríguez*, supra, pág. 913. Véanse, también: *Coop. Seg. Múlt.*, supra, págs. 663–664; *Ford Motor*, supra, pág. 741; *First Bank*, supra, pág. 843; *Cooperativa*, supra, pág. 43; *Del Toro Lugo*, supra, pág. 987.[6]

Para que proceda la confiscación bajo esta modalidad —*in rem*— es preciso determinar "si existe prueba suficiente y preponderante de que se haya cometido un delito, y que exista un nexo entre la comisión del delito y la propiedad confiscada". *Del Toro Lugo*, supra, pág. 983. Véanse, también: *Díaz Ramos*, supra, pág. 203; *Suárez*, supra, pág. 52. Nótese, además, que el estándar probatorio al que se alude es "prueba suficiente y preponderante"; esto bien

---

[5] Valga señalar, además, que la jurisprudencia federal también ha reconocido el carácter punitivo de los procedimientos de confiscación civil *in rem*. Véanse, por ejemplo: *Austin v. United States*, 509 US 602, 618 (1993) ("We conclude, therefore, that forfeiture generally and statutory *in rem* forfeiture in particular historically have been understood, at least in part, as punishment"); *Plymouth Sedan v. Pennsylvania*, 380 US 693, 700 (1965) ("[A] forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law"); *United States v. Ursery*, 518 US 267 (1996) (se reconoce que las confiscaciones no son "castigo" para efectos de la cláusula de doble exposición de la Quinta Enmienda de la Constitución federal). Incluso, hay quienes han planteado que, en consideración a su carácter esencialmente punitivo, es inapropiado clasificar los procedimientos de confiscación *in rem* como procesos civiles. Véase S.R. Klein, *Civil in Rem Forfeiture and Double Jeopardy*, 82 Iowa L. Rev. 183, 190–191 (1996) ("[T]he historical classification of forfeiture as a civil in rem action against a particular piece of property is no longer appropriate").

[6] Para una discusión sobre los elementos disuasivos como justificaciones de la pena, véase, en general, R. Blecker, *Haven or Hell? Inside Lorton Central Prison: Experiences of Punishment Justified*, 42 Stan. L. Rev. 1149 (1990).

pudiera acusar una de las particularidades que comporta la confiscación en su modalidad civil *in rem*, a saber, un estándar probatorio distinto al aplicable a procedimientos propiamente penales.[7] Sin embargo, esta particularidad no trastoca su carácter y naturaleza esencialmente punitivos, según ha sido reconocido palmariamente por este Tribunal.

Por otra parte, dada la ficción jurídica que sustenta esta modalidad confiscatoria, en virtud de la cual se le imputa la culpabilidad del delito a la cosa, "la culpabilidad o inocencia del propietario *es irrelevante* en cuanto a la procedencia o no de la confiscación civil". *Del Toro Lugo*, supra, pág. 982. Ello, al menos, en términos estrictamente *ficcionales*. Sin embargo, no debe perderse de vista que "[e]l derecho crece y se consolida desechando ficciones y afincándose en la realidad". *Pueblo v. Pérez Santaliz*, 105 DPR 10, 23 (1976). Máxime cuando mediante estas ficciones, el Estado pretende interferir con intereses constitucionalmente tutelados, como el derecho al disfrute de la propiedad. Const. PR, Art. II, Sec. 7.

Por último, como ya se dijo, es preciso repetir que, según conceptuado en nuestro ordenamiento, el proceso de confiscación es independiente al encausamiento penal concomitante que dimana de los mismos hechos. *Ford Motor*, supra, págs. 741–742; *Del Toro Lugo*, supra, pág. 983. Habría, sin embargo, que matizar los efectos de tal independencia.

---

[7] En esta ocasión, por ser innecesario, no resolvemos si el estándar de "prueba suficiente y preponderante" es compatible, como cuestión de derecho constitucional puertorriqueño, con la confiscación, dado el evidente carácter punitivo de ésta en nuestro ordenamiento.

B

En nuestra jurisdicción, el proceso de confiscación está regulado por la Ley Uniforme de Confiscaciones de 2011, Ley Núm. 119 de 12 de julio de 2011, 34 LPRA sec. 1724 *et seq.*([8]) Este estatuto fue promulgado con tal de "establecer un trámite expedito, justo y uniforme para la confiscación de bienes por parte del Estado y la disposición de éstos". Exposición de Motivos de la Núm. 119, *supra*. Con tal de identificar las normas jurídicas pertinentes para la resolución adecuada de la controversia que nos atañe, conviene repasar puntualmente el texto de aquellos artículos de la referida ley que delimitan la relación entre el proceso de confiscación y el encausamiento penal concomitante a éste, por dimanar de los mismos hechos.

En primer lugar, en lo pertinente, el Artículo 8 de la Ley Uniforme de Confiscaciones de 2011 dispone que, en nuestro ordenamiento,

> [e]l proceso de confiscación será uno civil dirigido contra los bienes e independiente de cualquier otro proceso de naturaleza penal, civil o administrativa que se pueda llevar contra el dueño o el poseedor de los bienes ocupados bajo las disposiciones de cualquier ley que autorice la confiscación de bienes por parte del Estado. 34 LPRA sec. 1724e.

Se aprecia, pues, que, cónsono con la discusión precedente, en nuestra jurisdicción, la confiscación está caracterizada como un proceso civil —esto es, *in rem*—, independiente a cualquier otro proceso, sea de naturaleza civil, penal o administrativa.

---

([8]) Este estatuto derogó la Ley Uniforme de Confiscaciones de 1988, Ley Núm. 93 de 13 de julio de 1988, 34 LPRA ant. sec. 1723 *et seq.*, la cual, a su vez, derogó la Ley Uniforme de Confiscaciones de Vehículos, Bestias y Embarcaciones, Ley Núm. 39 de 4 de julio de 1960, 34 LPRA ant. sec. 1721 *et seq.* Nótese, además, que la mayoría de la jurisprudencia citada en esta opinión se resolvió al amparo de estos estatutos derogados. Ello, sin embargo, no es óbice para recurrir a ésta. Como se verá en la discusión ulterior, aun cuando hay diferencias apreciables entre aquellos estatutos y la actual Ley Uniforme de Confiscaciones de 2011, es innegable que este Tribunal afianzó sus decisiones en consideraciones que trascendían determinado esquema estatutario, a saber: el carácter evidentemente punitivo de la confiscación y las salvaguardas que contiene nuestra constitución, las cuales limitan el poder punitivo del Estado.

Por otra parte, en lo que respecta la regulación positiva de la confiscación en nuestro ordenamiento, el Artículo 15 de la Ley Uniforme de Confiscaciones de 2011 dispone que "se presumirá la legalidad y corrección de la confiscación independientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos". 34 LPRA sec. 1724*l*. En consecuencia, "[e]l demandante t[endrá] el peso de la prueba para derrotar la legalidad de la confiscación". Íd.

Establecido el carácter civil o *in rem* de la confiscación en nuestro ordenamiento —la cual, además, está revestida de una presunción de legalidad y corrección—, conviene repasar someramente cómo la jurisprudencia de este Tribunal ha abordado el asunto de la interrelación entre ésta y el encausamiento penal concomitante relacionado a los mismos hechos, en particular, cuando éste no prospera.

## C

Tal y como se ha intimado en la discusión precedente, este Tribunal, en el pasado, al palio de la legislación entonces vigente, atendió la interrelación entre el procedimiento civil de confiscación y el encausamiento penal concomitante a través de la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia. De esta forma, condicionó la procedencia de la confiscación al resultado del proceso penal relacionado a los mismos hechos. Sin embargo, al utilizar inopinadamente la doctrina de cosa juzgada en la referida modalidad, desnaturalizó su ámbito normativo y rehuyó articular puntualmente las consideraciones de índole constitucional que afianzaban tal proceder, aun cuando éstas destellaban tímidamente en aquella jurisprudencia. Por lo tanto, le compete a este Tribunal hacer las distinciones de rigor, si bien someramente, ciñéndonos a las particularidades del caso. Para ello, em-

pero, es menester repasar brevemente la norma anterior que, en esta ocasión, se reformula.

i. La doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia, ante todo, busca "promover la economía procesal y judicial, y amparar a los ciudadanos del acoso que necesariamente conlleva litigar en más de una ocasión hechos ya adjudicados". *P.R. Wire Prod. v. C. Crespo & Assoc.*, 175 DPR 139, 153 (2008). Así, esta doctrina opera "cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante [una] sentencia [anterior] válida y final". *A & P Gen. Contractors v. Asoc. Caná*, 110 DPR 753, 762 (1981). Esto es, *"el impedimento colateral por sentencia impide que se litigue en un pleito posterior un hecho esencial que fue adjudicado mediante sentencia final en un litigio anterior"*. *P.R. Wire Prod.*, supra, pág. 152.

Por otra parte, lo distintivo del impedimento colateral por sentencia es que, para que éste aplique, no se precisa la más perfecta identidad de causas entre el pleito en el cual se invoca y el anterior, en el que recayó sentencia válida y final. Ello, contrasta significativamente con la doctrina de cosa juzgada, la cual requiere que "concurra[n] la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron". Art. 1204 del Código Civil, 31 LPRA sec. 3343. Véase, además, *A & P Gen. Contractors*, supra, pág. 763. Nótese, sin embargo, que al margen de las diferencias apreciables entre la doctrina de cosa juzgada y su modalidad, ambas requieren previamente, para ser invocadas, una adjudicación válida, final y *en los méritos*.

No obstante, es menester señalar que en lo que a sus requisitos formales se refiere, este Tribunal ha sido un tanto flexible al considerar el cumplimiento de éstos para su aplicación. Por ejemplo, ha permitido utilizar una convicción penal como impedimento colateral en un pleito civil, aun cuando las partes en ambos pleitos no eran las

mismas. Véase, en general, *Fatach v. Triple S, Inc.*, 147 DPR 882 (1999). "La razón para no requerir la identidad de partes en el contexto de pleitos criminales y civiles surge más por razones de política pública que por consideraciones de teoría jurídica". Íd., pág. 892. Se permite, pues, atenuar los rigores doctrinales de esta figura en atención a consideraciones de política pública. Justamente bajo ese entendido, este Tribunal atendió en el pasado controversias análogas a la que nos ocupa.

ii. Cónsono con lo anterior, en lo que respecta a la interrelación entre un procedimiento civil de confiscación y el encausamiento penal concomitante a éste, este Tribunal reiteradamente ha resuelto que la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia, permite disponer sumariamente de aquél cuando la causa penal no prospera.[9] Véase, entre otros, *Del Toro Lugo*, supra. Esto, aun cuando la causa penal concomitante no haya prosperado en etapas anteriores al juicio, o sea, aun cuando no se haya obtenido una absolución en los méritos.

> En síntesis, [la jurisprudencia de este Tribunal] reconoc[e] que la *absolución* en los méritos durante el juicio en su fondo, la *exoneración* del imputado al advenir final y firme la determinación de no causa probable para acusar, así como la supresión de la única evidencia incriminatoria durante el procedimiento criminal, son fundamentos suficientes para aplicar la doctrina de impedimento colateral por sentencia en el correspondiente proceso civil de confiscación y de esa manera evitar incongruencias injustificadas entre el ordenamiento criminal y el civil. (Énfasis en el original). *Suárez*, supra, págs. 56–57.[10]

Así, aunque este Tribunal, en el pasado, haya optado

---

[9] Una vez más, es imperativo puntualizar que en esta ocasión nos ceñimos a aquellas instancias en que el encausamiento penal no prospera por razones distintas a una absolución en los méritos. Cf. *Carlo v. Srio. de Justicia*, 107 DPR 356 (1978); *Ochoteco v. Tribunal Superior*, 88 DPR 517 (1963).

[10] Incluso, en *Suárez v. E.L.A.*, 162 DPR 43, 61–62 (2004), este Tribunal resolvió que la desestimación de la causa penal por incumplimiento con los términos de juicio rápido permitía disponer sumariamente del proceso de confiscación civil relacionado a los mismos.

por invocar la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia, para explicar la relación entre ambos procesos, lo cierto es que esta relación se debe a otras consideraciones. Verbigracia, "evitar incongruencias injustificadas entre el ordenamiento criminal y el civil". *Suárez*, supra, pág. 57. "Es decir, no se trata únicamente de la aplicación de la doctrina de *impedimento colateral por sentencia*, sino de excepciones a la independencia del proceso *in rem* fundadas en la extinción de la acción penal contra la persona presuntamente responsable del delito". *Coop. Seg. Múlt.*, supra, pág. 676. Después de todo, "[e]n nuestro ordenamiento, solamente las personas naturales o jurídicas pueden cometer un delito", íd., pág. 678, y es precisamente en virtud de haberlo cometido que el Estado está legitimado a intervenir con intereses fundamentales como la libertad o la propiedad.

Sin embargo, habría que matizar lo anterior. En realidad, la vinculación de los procedimientos que nos ocupan nunca se pudo explicar satisfactoriamente a través de la invocación, sin más, de la doctrina de cosa juzgada, en la modalidad de impedimento colateral por sentencia. Véase, por ejemplo, *Del Toro Lugo*, supra, págs. 1005–1018 (Negrón García, J., Opinión concurrente y disidente). Más bien, la "íntima" relación entre ambos procesos, *Coop. Seg. Múlt.*, supra, pág. 672, se debió a las aludidas "excepciones a la independencia del proceso *in rem*". Dichas excepciones, a su vez, están fundadas en consideraciones constitucionales, íd., pág. 680; en particular, en lo que atañe a las limitaciones al poder punitivo del Estado.

## D

Como se sabe, nuestra Constitución dispone que "[n]inguna persona será privada de su libertad o propiedad sin debido proceso de ley [...]". Const. PR, Art. II, Sec. 7. Como bien señala el Prof. Luis E. Chiesa Aponte, "[a] pri-

mera vista, [esta cláusula] solamente parece imponer limitaciones procesales al poder punitivo estatal. Sin embargo, en virtud de esta cláusula también se le imponen límites al poder del Estado para crear normas de derecho penal sustantivo". L.E. Chiesa Aponte, *Derecho penal sustantivo*, San Juan, Pubs. JTS, 2007, pág. 38. Por otra parte, nuestra Constitución también reconoce el derecho al disfrute de la propiedad como una de esas prerrogativas de carácter fundamental del ciudadano. Véase Const. PR, Art. II, Sec. 7. No es para menos, la propiedad no sólo constituye un instrumento para organizar y regular un sinnúmero de relaciones jurídicas, sino que también constituye un medio a través del cual los individuos pueden garantizar las condiciones básicas indispensables para la materialización de una vida digna. Así, las disposiciones pertinentes de la Ley Uniforme de Confiscaciones de 2011 han de interpretarse a la luz de estas consideraciones.

E

Tomando en cuenta lo anterior, convendría repasar las disposiciones pertinentes de la Ley Uniforme de Confiscaciones de 2011. En particular, lo que se refiere a la independencia entre un proceso civil de confiscación y el procesamiento penal concomitante a éste.

Según se dijo, el Artículo 8 de la Ley Uniforme de Confiscaciones de 2011 establece la independencia entre los procedimientos que nos ocupan. Sin embargo, dada la discusión precedente, habría que repensar los contornos de tal independencia; sobre todo, habida cuenta de los intereses constitucionales concernidos.

Para efectos de la controversia que nos atañe, baste decir que la independencia del proceso de confiscación es una independencia de carácter *formal* —esto es, procesal—. Es decir, tal independencia supone que en ese proceso se dirimirá exclusivamente aquello que se relacione a la confisca-

ción, en conformidad con las pautas jurídicas aplicables. Además, dada su caracterización como "proceso civil", resultarán inaplicables, por ejemplo, las rigurosas salvaguardas procesales que son imperativas en un procesamiento propiamente penal. Lo anterior, empero, no implica, de suyo, que dicho proceso confiscatorio no pueda verse afectado por determinaciones en otros procesos, pues éstas bien podrían incidir en la médula de éste. Esto es, la independencia *formal* de los procesos no impide que éstos estén *materialmente* relacionados entre sí. Después de todo, las protecciones que dispensa nuestra Constitución —de factura más ancha—([11]) no han de ceder ante meros formalismos, cuando éstos pretenden ser usados como subterfugios para que el Estado menoscabe intereses constitucionalmente protegidos. Recuérdese, pues, que mediante la confiscación, el Estado ejerce su poder punitivo y, en efecto, incide sobre uno de los derechos fundamentales de la persona, a saber, la propiedad. Véase Const. PR, Art. II, Sec. 7.

Por otro lado, el Artículo 15 de la Ley Uniforme de Confiscaciones de 2011 establece una presunción de legalidad y corrección a favor del Estado. Según ésta, se presumirá en todo momento que la confiscación efectuada por el Estado fue conforme a Derecho, esto es, fue legal. Sobre este particular, y a la luz de la discusión anterior, es suficiente señalar que el resultado favorable obtenido en el proceso penal relacionado a los mismos hechos que motivaron la confiscación hace innecesario tener que discutir en esta ocasión cómo opera dicha presunción. Téngase en cuenta

---

([11]) Cf. E.L. Chiesa Aponte, *Los derechos de los acusados y la factura más ancha,* 65 (Núm. 1) Rev. Jur. UPR 83, 119–120 (1996) ("En Puerto Rico se ha llegado a resolver que una absolución tiene efecto de cosa juzgada, a favor del acusado, en cuanto a la acción civil de impugnación de confiscación, si la confiscación está basada en la conducta delictiva por la que fue absuelto el acusado. Esto es cuestionable, por decir lo menos, en virtud del escaso valor probatorio de una absolución, para lo que basta duda razonable, a diferencia de la acción de confiscación donde es suficiente preponderancia de la prueba. *Si se quiere, aquí hay también 'factura más ancha'* "). (Énfasis suplido).

que la vinculación de ambos procesos, en nuestra jurisdicción y al palio de nuestra Constitución, responde a exigencias de índole constitucional. Véase *Coop. Seg. Múlt.*, supra, pág. 680 ("Al amparo de nuestras interpretaciones constitucionales, y cónsono con la normativa federal vigente, hemos vinculado el resultado del proceso civil de confiscación al desenlace de la causa criminal contra la persona imputada del delito a base del cual se justifica la confiscación").

## III

En el caso ante nuestra consideración, Universal —la recurrida— interpuso una demanda de impugnación de confiscación. Durante su tramitación, presentó una moción de sentencia sumaria. En dicha moción, alegó que la determinación de "no causa para acusar", obtenida en vista preliminar en alzada en el procedimiento penal concomitante con los mismos hechos que motivaron la confiscación, debería servir como base para disponer sumariamente de la demanda en cuestión. Esto es, el resultado del proceso penal relacionado a los mismos hechos debía de surtir efectos en el proceso civil de impugnación de confiscación. El Estado, por su parte, se opuso oportunamente e invocó los Artículos 8 y 15 de la Ley Uniforme de Confiscaciones de 2011, en tanto éstos disponen, respectivamente, la independencia de ambos procedimientos y establecen una presunción de legalidad y corrección a su favor.

Trabada en estos términos la controversia, el foro primario declaró "con lugar" la demanda de impugnación de confiscación, tomando en consideración los fundamentos previamente señalados. Mientras tanto, el foro apelativo intermedio fue de la misma opinión y, en consecuencia, confirmó el dictamen recurrido. Según la discusión que precede, ambos foros actuaron conforme a derecho.

Como se dijo, el resultado favorable en el proceso penal

relacionado a los mismos hechos que motivan la confisca-
ción permite disponer sumariamente del pleito civil de
impugnación de ésta. Esto, debido a consideraciones de
índole constitucional, las cuales vinculan indefectible-
mente ambos procesos. Ante todo, la mera clasificación
del proceso de confiscación como uno "civil" no lo desvir-
túa de su naturaleza punitiva, según ha sido reconocida
por la jurisprudencia de este Tribunal. De igual forma, la
mera invocación de la ficción *in rem* no permite que el
Estado intervenga con intereses fundamentales del ser
humano, como la propiedad, sin atenerse a los imperati-
vos de nuestra Constitución. No habiéndose probado de-
lito alguno, el Estado está impedido de probar que la cosa
confiscada se utilizó en la comisión de un delito —como
cuestión jurídica—.

## IV

Por todo lo anterior, es menester concluir, sin ambages,
que bajo la Ley Uniforme de Confiscaciones de 2011, la
determinación favorable a un imputado o acusado en el
procedimiento penal surte efectos sobre el pleito civil de
impugnación de confiscación relacionado a los mismos he-
chos delictivos. Este resultado es cónsono con las proteccio-
nes robustas que brinda nuestra Constitución. Asimismo,
llegamos al mismo sin tener que recurrir necesariamente a
la doctrina de cosa juzgada, en su modalidad de impedi-
mento colateral por sentencia. De lo que se trata, más bien,
es de limitaciones al poder punitivo del Estado en virtud de
las salvaguardas que contiene nuestra Constitución. La
mera invocación de una ficción jurídica, pues, no ha de per-
mitir que el Estado desatienda las exigencias que le im-
pone nuestra Constitución.[12]

---

[12] Es imperativo señalar que los argumentos constitucionales que preceden se hacen al amparo de la Constitución del Estado Libre Asociado de Puerto Rico. Véase *Michigan v. Long*, 463 US 1032 (1983).

En mérito de lo antes expuesto, estoy *conforme* con la determinación del Tribunal de Apelaciones, la cual se confirma, por estar igualmente dividido este Tribunal.